JOHN. C. O'BRIEN *vs.* CITY OF ST. PAUL.

## October 30, 1878.

**Municipal Corporation—Improvement of Streets—Damage to Private Property.**—A municipal corporation, in improving its streets for public use, has the same rights and power over the land upon which they are laid as a private owner, and is subject to the same liabilities for damages done to others. The right to cause damage to private property, beyond that which a private owner may cause, without liability, must be acquired through the right of eminent domain.

**Surface Water—Rights and Liabilities of Land-owner.**—While an owner of lands may, for the purpose of improving them, raise or lower the surface so as to interfere with the flow of surface water, he has no right to turn such water in destructive currents upon adjoining lands, unless it be necessary to the proper improvement of his own land.

**Same—Duty of Municipal Corporation.**—Where a municipal corporation, in improving its streets, accumulates surface waters, it is its duty to take care of them, if reasonably practicable, and prevent their injuring others.

Appeal by plaintiff from an order of the district court for Ramsey county, *Simons*, J., presiding, sustaining a demurrer to the complaint.

*James B. Beals*, for appellant.

*Wm. P. Murray*, for respondent, cited Dillon Mun. Corp. §§ 797–800; *Bowlsby* v. *Speer*, 2 Vroom (N. J.) 351; *Flagg* v. *Worcester*, 13 Gray, 601; *Town of Union* v. *Durkes*, 9 Vroom (N. J.) 21; *Turner* v. *Inhabitants of Dartmouth*, 13 Allen, 291; *Hoyt* v. *City of Hudson*, 27 Wis. 656; *Bailey* v. *Mayor of New York*, 3 Hill, 531; *Hatch* v. *Vermont Central R. Co.*, 25 Vt. 67; *Wilson* v. *Mayor of New York*, 1 Denio, 595; *Mills* v. *Brooklyn*, 32 N. Y. 489.

GILFILLAN, C. J.   Appeal from an order sustaining a general demurrer to the complaint.   The substance of the complaint is:  That the city established the grade of, opened, graded and improved, Hoffman avenue, a public street in the city, extending along and upon the side of a high bluff, known as Dayton's bluff.   Conway street, another public street, intersects Hoffman avenue nearly at right angles, and extends down the face of the bluff.   Down the face or surface of this bluff, a large amount of water, from a great extent of country beyond it, drains, at the time of every considerable fall of rain, and, before Hoffman avenue was graded, reached the flat below by means of many natural channels or depressions in the face of the bluff, without flowing upon plaintiff's lots, which lie down the bluff, about fifty feet below the grade of the avenue. The grading and improving of the avenue interfered with the natural flow of the water falling in rains, upon, back of and beyond the bluff, diverted it from its natural channels, and caused it to flow along the avenue from both directions to its intersection with Conway street, and to collect at that point in great and dangerous quantities, so as to flow with great violence over the grade of the avenue upon the lots below. The city (negligently, as is alleged,) failed to care for, or carry away, or provide any means for carrying away, the water accumulating at that point in times of rain.   On two specified occasions, great and dangerous quantities of water, which had fallen in showers, collected, by reason of the grade of the avenue, at its intersection with Conway street, and was discharged from the avenue upon lots abutting thereon, and over said lots upon the lots of plaintiff, doing great damage.

There is, in the complaint, a general allegation that in all respects the grading and improving of the avenue was negligently and improperly done, and that the city negligently and wrongfully failed to keep the avenue open and in good repair, and free from obstructions and nuisances, as it is bound by its charter.   But it is not alleged in what particulars (aside from so establishing the grade, and grading, as to accumulate

surface water, and failing to make provision for preventing the accumulated water flowing upon and injuring private property,) the grading was negligently or improperly done; and those indefinite allegations are not sufficient to raise any material issue.

The only point presented by the complaint is as to the right of a municipal corporation to so grade or improve its streets as to collect surface waters in large and dangerous quantities, and permit them to discharge upon lots of private owners, injuring or destroying them, without making compensation. The question has never before been presented to this court. *O'Brien* v. *City of St. Paul*, 18 Minn. 176, was a case of unlawful interference with a natural water-course, and all the decisions hold that for such an interference a municipal corporation is liable to the same extent as a private person. *Kobs* v. *City of Minneapolis*, 22 Minn. 159, was not a case of water collected and discharged upon private property, by grading or improving a street, but of water discharged upon one lot, for the purpose of relieving another. In *Lee* v. *City of Minneapolis*, 22 Minn. 13, there was no accumulating of surface water, but, as a consequence of raising the grade of a street, the rain-water falling upon it spread into the lot of the plaintiff; and in *Alden* v. *City of Minneapolis*, 24 Minn. 254, the street grades did not turn upon the plaintiff's premises any greater quantity of water than, in the natural condition of the surface, would have settled there; and the only question was, whether a muncipal corporation is liable for neglecting to construct sufficient sewers and gutters, where the necessity for them is not created by the act of the corporation. In the first of these two cases, the court held the corporations liable; in the last two, not liable. There are many cases, of which a leading one is *Radcliff* v. *Mayor of Brooklyn*, 4 N. Y. 195, to the effect that for consequential damages to private property, caused by grading streets within the authority conferred on a municipal corporation, there is no remedy to the owner, unless one is given by statute; and some cases, following the

one cited, have applied the principle where the damages were not merely consequential, but direct and immediate. Other decisions attribute to a municipal corporation, in the control and improvement of streets for public use, the same rights and power as a private owner has over his own land, subject to the same liabilities; and hold that the corporation will be liable for damages caused to private property by grading streets, when a private owner of the soil over which the streets are laid would be liable if improving it for his own use; and that the right to cause damage beyond that which a private owner may cause without liability must be acquired through the right of eminent domain. *Nevins* v. *Peoria,* 41 Ill. 502; *Aurora* v. *Gillett,* 56 Ill. 132; *Same* v. *Reed,* 57 Ill. 29; *Rhodes* v. *Cleveland,* 10 Ohio, 159; *McCombs* v. *Akron,* 15 Ohio, 474; *Flagg* v. *Worcester,* 13 Gray, 601; *Pettigrew* v. *Evansville,* 25 Wis. 223; *Hoyt* v. *City of Hudson,* 27 Wis. 656. The principle of this latter class of cases we deem to be most sound, as it is most in accordance with justice and with the protection to private rights against encroachment by the public, which the constitution aims to give.

The right of the corporation to establish such a grade for a street, and to improve it as the public interest may require, is consistent with this rule. For a private owner, in improving his land, may raise or lower its surface, although coterminous lands may be thereby rendered less desirable. And if the grade established for a street make access to an abutting lot less convenient than before, still the owner has no legal cause of complaint, for he has no right to a use of the street inconsistent with the public use; his rights in it, both for passage and access, are subject to the public right, and to the power of the proper authorities to make it fit and convenient for public use.

As to what may be done by coterminous owners as affecting surface water, the decisions of the courts in the different states are conflicting. Some of them admit the doctrine of servitudes as it exists in the civil law, holding that an owner has no right to

interfere with the flow of such water so as to injuriously affect other lands; that he is bound to permit it to flow as it would from the natural formation of the surface, either from his upon adjoining land, or from adjoining land upon his, neither obstructing, increasing nor diminishing it, nor changing its course; and that his right to improve his land is controlled by this obligation. Others assert the absolute dominion of an owner over his land, and the right to do with it what he pleases. It is a maxim of the common law that the owner of the soil owns not only the surface, but all above and all below it. In a natural water-course, there is a right of property in all the owners through whose land it flows, and the right of each owner is qualified, being merely the right to use its water in the customary way, as it flows over his land. Surface water, however, is of too casual and fugitive a nature to be, at the common law, the subject of property rights, except that while actually on one's land, and in his possession, as it were, he may generally do with it what he will. It has been called a common enemy, which each owner may get rid of as best he may; and some cases, and not a few indeed, maintain the owner's right to adopt any means he may choose to prevent it coming on his land, or to turn it off from his land, without regard to the consequences which may ensue to others. These cases are founded on an owner's assumed right to do absolutely what he will with his own. This right, however, is somewhat restricted by the maxim that a man must so use his own as not unnecessarily to do injury to another—a maxim which grows out of the necessities of society, and without which society would be hardly possible. A man's right to use his property is restricted, for instance, to the manner in which such property is ordinarily used; *Radcliff v. Mayor of Brooklyn*, 4 N. Y. 195; and it must be apparent that a man may do many things with his land in the country, which he could not be permitted to do in a crowded city. An owner may improve his land for the purpose for which such land is ordinarily used, and may do what is necessary for that purpose.

He may build upon it, or raise or lower its surface, even though the effect may be to prevent surface water, which before flowed upon it, from coming upon it, or to draw from adjoining land, surface water which would otherwise remain there, or to shed surface water over land on which it would not otherwise go. *Rawstron* v. *Taylor*, 11 Exch. 369; *Bentz* v. *Armstrong*, 8 Watts & Serg. 40; *Goodale* v. *Tuttle*, 29 N. Y. 459; *Frazier* v. *Brown*, 12 Ohio St. 294; *Gannon* v. *Hargadon*, 10 Allen, 106.

His right to adopt such means of improvement, by building, ditching, or otherwise, as to accumulate the water, and discharge it in large and destructive quantities directly upon adjoining land, is perhaps more questionable. The spread and diffusion of the water over the coterminous land is a necessary consequence of improvement, where raising the surface is necessary for that purpose, and the injury caused is ordinarily slight; while discharging the water in torrents is seldom unavoidable, and usually the result of caprice and whim on the part of the owner improving, and likely to be attended with serious consequences. Although we are not prepared to say that in no case can an owner lawfully improve his own land in such a way as to cause the surface waters to flow off in streams upon the land of another, we do not hesitate to say that he may not turn the water in destructive currents upon the adjoining land, unless it be necessary to the proper improvement and enjoyment of his own land. *Nevins* v. *Peoria*, 41 Ill. 502; *Aurora* v. *Gillet*, 56 Ill. 132; *Aurora* v. *Reed*, 57 Ill. 29; *Pettigrew* v. *Evansville*, 25 Wis. 223; *Hoyt* v. *Hudson*, 27 Wis. 656; *Livingston* v. *Macdonald*, 21 Iowa, 160; *Indianapolis* v. *Lawyer*, 38 Ind. 348; *Rhodes* v. *Cleveland*, 10 Ohio, 159.

From the complaint there does not appear any necessity, in grading the avenue, to collect the water at the point indicated, nor any difficulty in conducting it off without injury to private property, if it was desirable to so grade the avenue as to accumulate the water there. Having accumulated the water there, it was the duty of the city to take care of it—

certainly, if reasonably practicable—and prevent it injuring others.  *Byrnes* v. *Cohoes,* 67 N. Y. 204.

Order reversed.