TOWNSHIP OF BLAKELY vs. ROBERT DEVINE.

October 13, 1886.

| | |
|---|---|
| 36 | 53 |
| 41 | 386 |
| 36 | 53 |
| 42 | 176 |
| 43 | 479 |
| 36 | 53 |
| 44 | 537 |
| 36 | 53 |
| 53 | 263 |
| 36 | 53 |
| 71 | 407 |

Town—Liability for diverting Surface-Water from Highway to adjoining Land.—The supervisors of a town, in improving a highway, are not authorized to collect surface-water in artificial drains or ditches, out of its natural course, and cause it to flow upon the lands of an adjacent proprietor, to his damage, nor in a greater volume or quantity than it would naturally otherwise do.

Findings of fact held insufficient to support the judgment.

Appeal by defendant from a judgment of the district court for Scott county, where the issues were tried by Macdonald, J., and a jury, upon whose special findings a judgment was ordered for plaintiff, and the defendant's motion for a new trial was denied.

C. K. Davis and E. Southworth, for appellant.

H. J. Peck, for respondent.

VANDERBURGH, J. The substance of the complaint in this case is that the defendant, in July, 1884, entered upon the public highway where the same crosses his farm, and then and there dug a ditch along the travelled track, a distance of about 30 rods in length, and at the south end of the ditch built an embankment, whereby the waters that naturally, and have from time beyond memory, passed west of

the highway were dammed up and overflowed upon the highway at
the north end of the ditch, and thereby threatened seriously to dam-
age such highway.   The defendant's answer shows that in the year
1882 the plaintiff concentrated the surface-water in ditches on either
side of the highway, which rises over a hill beyond the premises of
the defendant, and at the foot of the hill carried the waters to the west
side of the road, which runs through his land, and made a ditch along
the same about 20 rods, and then turned the ditch from the road west,
in and upon the land and crops of the defendant; that the ditches
along the highway concentrated and increased the flow of surface-
water, and large quantities thereof were in consequence turned upon
his land, to his great damage.   He also alleges that the plaintiff
made another ditch and culvert across the road, so as to cause the
waters upon the east side of the road to flow across and upon the de-
fendant's land.

The defendant was overseer of roads in that road-district at the
time of the wrongful acts complained of by plaintiff, which he alleges
consisted merely in extending the ditch which plaintiff had made on
the west side of the highway in a north-westerly direction to the top
of what is known as "Finch Hill," over which the road passes, for
the purpose of conducting the waters gathered in the ditch across
the same, through a culvert into a creek below,—the materials for
which culvert the plaintiff refused to furnish, but proceeded to fill up
the ditch so made by him as such overseer, and again turned the
waters upon defendant's premises; and that thereafter defendant pro-
ceeded to remove such obstructions, and built an embankment on his
own land to keep the water from overflowing the same.

The object of this action is to restrain the defendant from interfer-
ing with the work of the supervisors, and from interfering to prevent
the flow of water from the highway upon his premises.   Several spe-
cial findings of fact were made by the jury, upon which the trial
court ordered judgment for the plaintiff.   The defendant contends
that such judgment was not justified by the findings, and that sev-
eral of the findings were not justified by the evidence.

The material question in the case would seem to be the right of the
defendant to protect his land from the overflow of the surface-water

collected in the highway chiefly as the result of heavy rains. It is true there is evidence of the existence of a spring flowing in the same general direction, but it is clear that it was so small, and the flow so inconsiderable, that the damages apprehended by plaintiff did not arise from it, but from surface-water, and that the controversy substantially relates to the latter. This is apparent both from the pleadings and the evidence. The jury find that "there was a natural water-course which flowed down the hill north-west of defendant's house, and through where the culverts mentioned now are, or thereabouts, before this highway was constructed;" and also "that the town authorities, by ditching and grading the roads known as the Belle Plaine and Le Sueur road, and the road to the German settlement, concentrated and conveyed into the ditch, which passes by and crosses the road near Mr. Devine's house, water which but for said ditches and grading would not run into said ditch."

As respects such surface-water, the supervisors could not lawfully collect it in artificial drains or ditches out of its natural course, and cause it to flow upon the defendant's lands, to his damage, nor in a greater volume or quantity than it would naturally or otherwise do. *Beard* v. *Murphy,* 37 Vt. 99; *Hogenson* v. *St. Paul, M. & M. Ry. Co.,* 31 Minn. 224, (17 N. W. Rep. 374;) Washb. Easem. *356.

The natural effect of improving the highway in question, which forked into two roads upon the hill, with the grading and ditching incident thereto, would be to collect and retain in the ditches or ravine through which the highway was constructed surface-water which would otherwise be scattered in other directions, or spent over the surface of the ground.

The findings are not sufficient, independent of the evidence and the map of the premises which is made a part of the record, to present the case fully and intelligently; but waiving this, and considering them as aided by the record, and we think it clear that, under the rule above stated, the plaintiffs are not shown to be entitled to the injunction asked for. The findings do not show where the surplus surface-water escaped upon the lands of the defendant lying beyond the highway before the ditches were constructed, but the plaintiff's evidence shows that it entered his field about where his barn now stands,

which is several rods above the culvert near defendant's house. The evidence tends to show that after his barn was built it was turned off below the barn, and ran between the barn and house; but this does not appear by the findings, nor do they show where the water then entered his field. The town afterwards made the ditches referred to in the answer,—one extending, as alleged, on the westerly side of the road, about 20 rods from the upper culvert, and conducting the water to the termination thereof, at a point opposite the low ground or "sag" referred to, so that it passed into defendant's field and flowed down into the same; and the other on the south-east side, intended originally to carry the water over into the creek beyond, but which plaintiff closed, and turned across the road, through another culvert, into the first-mentioned ditch, at or about its terminus, so that the waters conveyed in both ditches were concentrated at that point, and were liable to overflow upon defendant's premises. And the jury find, further, that the "plaintiff, by its officers, before the acts complained of, caused the water to flow upon defendant's land more extensively than it otherwise would," and that "the closing of the last-mentioned ditch on the south-east side of the highway increased the volume of water which afterwards flowed over and on the other side of the highway, and upon the lands of defendant." These findings of the jury would seem, therefore, very clearly to establish an invasion of defendant's rights by the officers of the plaintiff.

But there are two other findings which, to the mind of the trial court, so far qualified the preceding as to warrant the conclusion to which the court came. One is that "the volume of water which has to flow through the culvert by defendant's house, and down to the end of the ditch, has not been *materially* increased by the digging of the ditches above said culvert," and another is "that the water which flowed down this hill, and over the road near defendant's house, gathered in a body, and flowed as a stream down to what is described as the 'sag' between the culvert and the Finch hill, before this highway was constructed." It will be observed, however, that in the first of these findings the attention of the jury is confined to the question of the amount of water which passes through the upper culvert, and the jury do not take into account the quantity directed into the east

ditch, and turned through the lower culvert; and in respect to the second finding we do not think it is fairly supported by the evidence, which tends to show that when the water, in its natural course, flowed over the defendant's land where his barn now stands, it then, at least, had no natural course or bed, but spread over the ground, and the surplus not wasted found its way into the low ground in question. But upon the state of the case, as imperfectly presented by the record, it sufficiently appears that the result of the action of the officers of the town has been to collect the surface-water in drains, and to turn it, increased in quantity, upon defendant's land, in a manner and at a place different from its natural flow, and we think an injunction restraining him from maintaining the embankments complained of was not warranted.

Judgment reversed, and new trial ordered.