JAMES ROWE *vs.* ST. PAUL, MINNEAPOLIS & MANITOBA RAILWAY COMPANY.

August 9, 1889.

**Surface Water—Rights of Land-Owner—Common-Law Rule.**—In respect to the disposition of surface water, the common-law rule prevails in this state, and, subject to the reasonable restriction that he must so use his land as not to injure his neighbor, a land-owner, in the use and improvement of his land, may obstruct or hinder the natural flow of surface water, and is not bound to provide drains or water-ways to prevent the accumulation thereof upon adjacent lands.

**Same—Exceptional Cases—Ravines.**—But exceptional circumstances may require a modification of this rule, as in the case of ravines in which surface water is gathered into streams in well-defined channels.

Appeal by plaintiff from an order of the district court for Clay county, *Mills,* J., presiding, refusing a new trial, the action having been dismissed at the trial for failure of the complaint to state a cause of action.

*O. Mosness,* for appellant.

*M. D. Grover* and *W. E. Dodge,* for respondent.

VANDERBURGH, J. The defendant's railroad traverses, in a north and south direction, township 142, range 46, which is alleged to be an unusually flat and level prairie, having a gradual and uniform slope of two to four feet to the mile westerly to the Red river. Plaintiff's farm is situate in the same township, about one mile east of the defendant's right of way, which lies consequently two to four feet lower than plaintiff's land. The action is for damages suffered by plaintiff by reason of the obstruction interposed by the defendant's road-bed to the free passage of surface water from the adjacent lands, so as to prevent the drainage thereof through or over defendant's right of way towards the river. Plaintiff owns three-quarters of section 10, in the township named, and the complaint alleges that during the year 1882 "said railroad was so improperly, carelessly, negligently, and unskilfully constructed, managed, and maintained, over and across said township 142, range 46, that the road-bed of said rail-

road unnecessarily dammed up and impeded and entirely stopped the flow of the usual surface water which naturally gathers and flows through a large and well defined coulie or natural depression in the prairie there, which said coulie gathers and accumulates enormous quantities of said water, and extends from the east towards the west in an irregular direction, at or near the centre of said section ten towards and across said railroad of the defendant, and stopped and impeded the usual surface water which naturally and otherwise would have passed from the east to the west with the natural slope of the country across the entire of said section ten and other lands thereto adjacent, by reason of wholly inadequate and insufficient water-ways and culverts through the road-bed of said railroad to allow the usual amount of such surface water to pass under and through said road-bed; and thereby, in the spring season of the year aforesaid, the said surface water was made to accumulate and stand for and during the period of about three weeks in such enormous quantities that several miles of country on the east side of said railroad, in said township 142, was overflowed and covered with water; and that thereby the said land of the plaintiff, for and during the period of three weeks in the spring of the year 1882, became and was overflowed and covered with water, and then and there and thereby the crop so growing on said premises, consisting of about 85 acres of grain, of the value of $1,800, became and was greatly damaged, and was wholly destroyed."

From this it appears that the road-bed stopped and impeded the usual surface water which naturally and otherwise would have passed from east to west with the natural slope of the country, and dammed up the "well-defined coulie or natural depression in the prairie," extending from near plaintiff's land, east and west, across the defendant's road, through which large quantities of water are gathered and accumulated. It will be observed that the negligence and unskilfulness in the construction and maintenance of the road complained of are particularly stated to be the want of adequate and sufficient water-ways and culverts through the road-bed of defendant to allow the usual amount of surface water to pass under and through the same. The only question in the case, then, is whether, upon these facts and

the rules of law applicable thereto, the defendant, as owner of the lower estate, was bound to provide sufficient drainage through its right of way to prevent the upper or dominant estate from being overflowed by surface water; it being admitted that adequate water-ways or culverts have not been provided for such purpose.

In respect to responsibility for the disposition of surface water, the common-law rule prevails in this state, and, subject to the reasonable restriction, applicable here as in other cases, that he must so use his own land as not to injure his neighbor, the owner of the lower or inferior estate may, in the use and improvement of his land, obstruct or hinder the natural flow of surface water, and turn the same back upon the lands of others, without liability for injuries arising from such obstruction. *O'Brien* v. *City of St. Paul*, 25 Minn. 331, 336. He is not permitted to collect it in a stream or body, and turn it upon the lands of others, to their injury. *Hogenson* v. *St. Paul, M. & M. Ry. Co.*, 31 Minn. 224, (17 N. W. Rep. 374;) *Township of Blakely* v. *Devine*, 36 Minn. 53, (29 N. W. Rep. 342.) But he is not bound to provide drains or water-ways to prevent the accumulation of surface water upon adjacent lands, the natural flow of which is interrupted by changes in the surface of his own lands caused by improvements thereon. *Pye* v. *City of Mankato*, 36 Minn. 373, (31 N. W. Rep. 863;) *Alden* v. *City of Minneapolis*, 24 Minn. 254, 262.

In *Hoyt* v. *City of Hudson*, 27 Wis. 656, which is cited by the appellant on another point to which we will refer later in the opinion, the general rule is stated to be that the owner has the right to obstruct and hinder the flow of mere surface water upon his land from the land of another; that he may even turn the same back on to the land of his neighbor without incurring liability for injuries caused by such obstruction; and this we find to be the rule as generally applied to railway embankments and structures in those states where the doctrine of the common law prevails. *O'Connor* v. *Fond du Lac, etc., Ry. Co.*, 52 Wis. 526, (9 N. W. Rep. 287;) *Hanlin* v. *Chicago & N. W. Ry. Co.*, 61 Wis. 515, 529, (21 N. W. Rep. 623;) *Kansas City & Emporia R. Co.* v. *Riley*, 33 Kan. 374, (6 Pac. Rep. 581;) *Abbott* v. *Kansas City, etc., Ry. Co.*, 83 Mo. 271, 285, overruling *Shane* v. *Kansas City, etc., Ry. Co.*, 71 Mo. 237.

The rule is not modified by the existence of depressions or hollows in the land in or over which mere surface drainage occurs in times of freshet; but a modification has been suggested in cases where, from the natural formation of the ground, large quantities of water, from heavy rains or melting snows, are forced into a channel, and flow in a stream through a narrow valley or ravine. In such cases it may frequently be found to be as reasonable and proper to bridge a ravine or provide a way of escape for the waters through an embankment, by a suitable culvert, as in the case of natural streams; and, if the channel is well defined and worn by the accustomed flowage of waters therein, it assumes the characteristics of a water-course, and circumstances may require that similar provision be made for it. *McClure* v. *City of Red Wing*, 28 Minn. 186, 193, (9 N. W. Rep. 767;) *Bowlsby* v. *Speer*, 31 N. J. Law, 351; *Palmer* v. *Waddell*, 22 Kan. 352; *Hoyt* v. *City of Hudson, supra.* And in such cases the effect of the culvert would not be to interfere with the natural flow of the waters beyond the road-bed or bridge, while under other circumstances the result might be to gather the surface waters into streams, to the damage of lands of adjacent owners.

*Swett* v. *Cutts*, 50 N. H. 439, also cited by this appellant, recognizes the right of the land-owner to change the diffusion of surface water at his will and pleasure, provided it be done in good faith, and in the enjoyment and for the greater usefulness of his own land. The rule, as stated and adopted by the courts of that state, is, in substance, that the land-owner may disturb the natural drainage to any degree necessary in the reasonable use of his own land; but what is such reasonable use is a question to be determined by the jury upon the facts and circumstances of each case. See, also, *Abbott* v. *Kansas City, etc., Ry. Co., supra.*

Whether, under the circumstances of particular cases as they may arise, any further modification of the rule may not be made by the courts in determining what may be a reasonable use or mode of improving property, is not necessary to discuss here. No such case is made by the complaint. It does not appear that there are any drains, natural or artificial, beyond the road-bed, into which accumulated waters turned through culverts could be carried off or dis-

posed of without trespassing upon the lands of others; and it does not appear that any well-defined channel or ravine of the character above referred to is crossed and closed by the defendant's road-bed. Upon the facts as alleged, we are of the opinion, therefore, that the court was right in dismissing the action. The general averment that the waters were unnecessarily obstructed by the embankment, only raises the question whether, upon the facts specially stated as the ground of the complaint, the defendant is liable in damages in this action, and raises no issue of fact in the case. The general topography of the country, as stated in the complaint, suggests the necessity, or propriety at least, both as respects public improvements and private interests, of a comprehensive system of drainage in that portion of the state.

Order affirmed.