Isaac Jordan *vs.* St. Paul, Minneapolis & Manitoba Railway Company.

December 9, 1889.

**Trial—Setting Aside One of Several Findings of Jury.**—When there is a general verdict, and also special findings of fact, it is not proper practice to move to set aside one of the findings of fact as contrary to the evidence, without asking for a new trial of the whole issue or of that particular question of fact, especially if setting it aside would require a judgment different from what would be required if it were allowed to stand.

**Surface Water—Railway Embankment Across Prairie.**—The rule that a land-owner may improve his own land for the purpose for which similar land is ordinarily used, and may do what is necessary for that purpose,—as, to build upon it, or raise or lower its surface, even though the effect may be to prevent surface water which before flowed upon it from coming upon it, or to draw from adjoining land surface water that would otherwise remain there, or to shed surface water over land on which it would not otherwise go,—applied to a railroad company constructing its road across a prairie country.

Appeal by plaintiff from a judgment of the district court for Clay county, *Mills*, J., presiding.

*W. B. Douglas,* for appellant.

*M. D. Grover* and *W. E. Dodge,* for respondent.

GILFILLAN, C. J.    From the course of the trial in this case, as shown by the settled statement of the case, it is apparent that the parties did not by consent enter upon the trial of any other than the issues made by the pleadings.    This makes it necessary to refer to the complaint to ascertain what issues it presents; that is, what act of the defendant it alleges as wrongful.    It alleges that the defendant wrongfully, unlawfully, wantonly, negligently, and maliciously cut, dug, and made, and caused to be dug, cut, and made, two certain large ditches about six miles in length, one on each side of its roadbed, parallel with and about ten feet from it, and connected them by means of five large culverts, the locations of which are given, the ditches running through large quantities of low and wet land, and which ditches did and do gather and accumulate large quantities of water by draining said low and wet lands, and did and do at certain seasons of the year convey large and enormous quantities of surface water from said culverts and from said two ditches, which water, by reason of and on account of said ditches and culverts, was unnecessarily made and forced to run in large and destructive currents through the ditches and culverts over large quantities of land, including that of plaintiff, whereby plaintiff's land was overflowed and covered with water, damaging his crops.    It is not alleged that there was anything wrongful in the mode of constructing the ditches or culverts; that the former were (if properly there) either too large or too small, or were unskilfully or badly constructed; or that the latter were badly constructed, or were insufficient in capacity or number, or improperly located; or that either ditches or culverts as constructed were unnecessary to the proper construction of the railroad. The complaint really calls in question only the right of the defendant to have the ditches and culverts there, even though necessary to the railroad, if their effect would be to accumulate surface water, and cause it to flow on plaintiff's land, where it would not otherwise flow.    The jury rendered a general verdict in favor of the plaintiff, and also returned answers to 16 specific questions of fact, which the court submitted to them to find upon.    The plaintiff moved to set

aside one of the special findings on the ground that it was contrary
to the evidence, which motion was denied; and the defendant moved
to set aside the general verdict, because inconsistent with the special
findings, and for judgment on the special findings, which motion
was granted, and judgment was accordingly entered, and the plain-
tiff appealed.

Where there is a general verdict and also special findings, we do
not think it proper practice to move to set aside one of the special
findings upon an essential fact, on the ground that it is contrary to
evidence, without asking to have a new trial, either of the whole is-
sue or of the particular question of fact. If such a finding could be
set aside on that ground, leaving the general verdict and other spe-
cial findings to stand, then, if setting it aside would require a judg-
ment different from what would be required if it were retained, the
setting it aside on the ground stated would have the effect of a trial
by the court without the jury. In this instance, however, within the
issues, whether the special finding were set aside or retained would
make no difference with the right to judgment. It was only to the
effect that the rain-fall on the occasion referred to in the complaint
was extraordinary and unusual. Whether it was ordinary or extraor-
dinary would make no difference with defendant's liability upon the
issues presented by the complaint.

It is conceded that the defendant had a right to construct and
maintain its railroad, and that its acts were done upon its right of
way, rightfully acquired. It is to be regarded, therefore, as an owner
doing the acts complained of on its own premises; and its duty and
liability are to be measured by the rule as to the duty and liability
in respect to surface waters that attaches in the case of an owner in
the use of his own land. The district through which, so far as in-
volved in this case, the defendant's road runs is prairie country, with
depressions in the surface, such as are found in every prairie district
in this state, along which surface waters, especially when subsiding,
flow until they find an outlet, or until they are absorbed in the soil,
or pass off by evaporation.

Two of the questions submitted to the jury were as follows: "(1)
Were the excavations by the railroad made by excavating the earth

therefrom for the purpose of constructing the defendant's railroad, and not for the purpose of drainage? (2) [Was the defendant's railroad properly constructed, and in the usual and ordinary manner of constructing railroads in prairie countries,] and with culverts so placed as to equalize the ordinary flow of surface water?" The first question, and that part of the second which we have placed in brackets, were answered in the affirmative; that part of the second not in brackets in the negative. As we have seen, no question is presented by the complaint as to the proper location of the culverts. The finding as to them is, therefore, outside of the issues, and must be disregarded. And it is the same as to the last question submitted, (No. 17,) referring to the sufficiency of the ditches to carry off ordinary surface water. No other of the special findings modifies in any degree the finding on the two questions we have quoted. The case is therefore one where a railroad company, for the purpose of properly constructing its road-bed, takes earth from one part of its premises and uses it upon the road-bed, thus leaving an excavation or ditch along each side of it, which is the usual and ordinary way of constructing railroads in prairie countries. It is evident that in a flat country, if it be desirable to raise the road-bed above the natural surface of the ground, the earth must be taken, as was done in this case, from alongside of the road-bed, and that so taking it will necessarily leave an excavation or ditch from which the earth has been taken. The right of one land-owner to use and improve his own land for the purpose for which similar land is ordinarily used, and that he may do what is necessary for that purpose, and that he may build upon it, or raise or lower its surface, even though the effect may be to prevent surface water which before flowed upon it from coming upon it, or to draw from adjoining land surface water which would otherwise remain there, or to shed surface water over land on which it would not otherwise go, is in accordance with the common-law rule as to surface waters, and is fully recognized in this state. *Lee* v. *City of Minneapolis*, 22 Minn. 13; *O'Brien* v. *City of St. Paul*, 25 Minn. 331; *Henderson* v. *City of Minneapolis*, 32 Minn. 319, (20 N. W. Rep. 322;) *Rowe* v. *St. Paul, M. & M. Ry. Co.*, 41 Minn. 384, (43 N. W. Rep. 76.) The right to so use and improve one's own land does not, how-

ever, include the right to do so merely by transferring from it surface waters naturally resting upon it to the land of another. It is only where such shifting of the burden follows as an incident to using or improving his land as such land is ordinarily used or improved, that it can be justified. *Kobs* v. *City of Minneapolis,* 22 Minn. 159; *O'Brien* v. *City of St. Paul, supra; Hogenson* v. *St. Paul, M. & M. Ry. Co.,* 31 Minn. 224, (17 N. W. Rep. 374;) *Township of Blakely* v. *Devine,* 36 Minn. 53, (29 N. W. Rep. 342;) *Pye* v. *City of Mankato,* 36 Minn. 373, (31 N. W. Rep. 863;) *Olson* v. *St. Paul, M. & M. Ry. Co.,* 38 Minn. 419, (37 N. W. Rep. 953.) This case comes within the rule of the cases first above cited.

Judgment affirmed.