### RETTA S. BEACH vs. SAMUEL D. GAYLORD.

### June 18, 1890.

Surface Water—Discharge of Rain-Water by Pipes.—The owner of an upper estate, on which he has erected a house, has no right to collect the waters which fall upon his roof into gutters, and from thence, by means of a conducting pipe, transfer and discharge them, although upon his own land, at such a place and in such a manner that, necessarily and inevitably, they are precipitated upon lower premises in an unnatural, unusual, and injurious volume and quantity.

Findings of fact *held* sufficient to sustain the judgment.

Appeal by defendant from a judgment of the district court for Hennepin county, where the action was tried by *Rea,* J., certain issues being submitted to a jury.

*Kitchel, Cohen & Shaw,* for appellant.

*Russell, Calhoun & Reed,* for respondent.

COLLINS, J.   From the findings of fact in this case, made after several questions had been submitted to and answered by a jury, it appears that plaintiff and defendant owned and occupied adjoining lots in the city of Minneapolis.   The plaintiff's dwelling-house stood 35 inches, and the defendant's 27 inches, from the dividing line; and consequently the houses were only about 5 feet apart.   On this line the plaintiff had built a high board fence.   The defendant's lot was from one to two feet higher than that of plaintiff, sloped towards it, and was lower near the centre of his own house, and near the centre of plaintiff's as well, than at either end.   The roof upon defendant's house was so constructed that a part of the waters falling thereon were gathered into gutters, and from thence, flowing into and through a conducting pipe, were discharged upon defendant's land in the open space between his house and the fence on the line, of about two feet in width.   At and about the place where the waters were so discharged, the soil of plaintiff's lot was sandy and pervious to water. The court also found that the waters so gathered into the conducting pipe, and discharged on defendant's land in the space before mentioned, flowed through and under the fence on to plaintiff's lot "in such large quantities as are likely to be injurious," and drained under and through the foundation walls of her house, filling her cellar at times to the depth of three feet, rendering it useless, and the house damp and mouldy, to her damage in the sum previously fixed by the verdict of the jury, for which sum, and that defendant be restrained and prohibited from future acts of the same character, judgment was ordered in plaintiff's favor.

The appeal is from a judgment entered in accordance with the findings and order; the assignments of error being, in effect, that the findings of fact did not warrant the conclusion of law, because it was not found that the defendant cast water upon the plaintiff's premises in increased or injurious quantities.   The appellant insists that the findings are incomplete and insufficient in this respect, citing a large number of cases from the reports of this state on the subject of surface waters, commencing with *Lee* v. *City of Minneapolis*, 22 Minn. 13, and ending with *Jordan* v. *St. Paul, M. & M. Ry. Co.*, 42 Minn. 172, (43 N. W. Rep. 849.)   Some of these cases have a bearing upon

the question now to be determined, but in several the act complained of, and which was declared unlawful, consisted in accumulating surface waters in pools or ditches, and then, without a grant, precipitating them in destructive torrents over the lands of others, where they *would not otherwise have gone,* to the damage of the latter lands. Such an act has been declared a positive invasion,—a trespass upon one's property rights. But, in the case at bar, it is obvious from the findings that, had no house been built by the defendant, the water which fell upon his lot would have naturally sought the plaintiff's land, and spread itself over its lower surface to some extent; and it is equally as obvious that if the water which descended upon the roof of his house had been permitted to drip from the eaves, had not been gathered into gutters and thence transferred to a single conducting pipe, it would have naturally diffused itself over plaintiff's. lower estate, possibly to her injury, but for which she would have no remedy, under ordinary circumstances. And these facts should be considered in giving effect to the finding last mentioned, which is the one specially pointed out as defective. The finding is not as clear and comprehensive as it might have been written; but it is apparent from it that, by means of the gutters upon defendant's roof, he has gathered up the water which fell thereon, and through the conducting pipe has transferred it to the ground at a point in close proximity to plaintiff's dwelling, without any apparent necessity for so doing in the proper improvement and enjoyment of his own land, to the plaintiff's great injury. The natural and inevitable result of gathering the water by these artificial means was to largely increase the quantity at the point where it reached the ground, and consequently the quantity which was turned upon plaintiff's premises in the immediate vicinity of the discharging end of the pipe. The natural flow of the surface water from the higher to the lower estate was so changed and diverted that it did not shed or spread over plaintiff's premises, but, after being collected at one point, necessarily in a largely increased volume, was precipitated, in an unnatural and unusual quantity and manner, so near to plaintiff's house as to necessarily cause her an injury. The direct result of defendant's act was to cast the water upon plaintiff in one particular place in an increased and injurious volume and

quantity. This he had no right to do, for although, under the common-law rule as to surface waters which has been adopted in this state, it is held to be a common enemy which each owner, in the necessary and proper improvement of his own land, may get rid of as best he may, he is restricted and controlled by the maxim that one must so use his own as not unnecessarily to injure the property of another person. It is true that the owner may improve his land in an ordinary manner, though the effect may be to shed surface water over the lands of others, and may also collect such water by artificial means; but he must not thereby cause it to flow upon the premises of another in greater volume or quantity than it would naturally otherwise do. *Township of Blakely* v. *Devine*, 36 Minn. 53, (29 N. W. Rep. 342;) *Pye* v. *City of Mankato*, 36 Minn. 373, (31 N. W. Rep. 863.) See, also, upon this point, *Bellows* v. *Sackett*, 15 Barb. 96; *Foot* v. *Bronson*, 4 Lans. 47; *Jutte* v. *Hughes*, 67 N. Y. 267; *Livingston* v. *McDonald*, 21 Iowa, 160; *Miller* v. *Laubach*, 47 Pa. St. 154; *Gregory* v. *Bush*, 64 Mich. 37, (31 N. W. Rep. 90;) *Kelly* v. *Dunning*, 39 N. J. Eq. 482. Nor is it material that the increased and injurious volume and quantity of water was first discharged from the pipe upon defendant's land. The mode by which plaintiff was injured, whether by casting it directly upon her premises, by artificial means, after it had been gathered up, or by collecting, conducting, and discharging it upon defendant's land so near the imaginary line which separated his lot from that of the plaintiff that the increased and injurious quantity and volume upon the latter must necessarily be the result, is wholly immaterial. *Pye* v. *City of Mankato, supra; Bellows* v. *Sackett, supra.*

Judgment affirmed.