DANIEL BROWN *vs.* WINONA & SOUTHWESTERN RAILWAY CO.

Argued April 19, 1893. Decided May 11, 1893.

**Surface Water—Rights and Liabilities of Landowner.**

The rule stated in *O'Brien* v. *City of St. Paul*, 25 Minn. 331, that "an owner may improve his land for the purpose for which such land is ordinarily used, and may do what is necessary for that purpose. He may build upon it, or raise or lower its surface, even though the effect may be to prevent surface water which before flowed upon it from coming upon it, or to draw from adjoining land surface water which would otherwise remain there, or to shed surface water over land on which it would not otherwise go,"—followed, and *held* that it makes no difference under the rule that the water shed over other land passed to. it in a stream, instead of in a diffused manner.

Appeal by defendant, Winona & Southwestern Railway Company, from an order of the District Court of Winona County, *Chas. M. Start,* J., made August 4, 1892, denying its motion for a new trial.

The plaintiff, Daniel Brown, owned lot seven (7) in block two (2) in the Village of Utica, and with his family occupied the dwelling house thereon. It fronted north onto a street sixty-six feet wide running east and west. Across the street to the north, and parallel with it, is the roadbed and track of the railroad, elevated several feet upon an embankment built for the purpose. Through this embankment is a sixteen-inch tile culvert. In times of heavy rain or melting snow the surface water comes from the north down to the embankment, and flows along the north side of it from the east, and from the west, to this culvert, and then through it and across the street to plaintiff's lot. -The surface of the country in that immediate vicinity is cultivated and nearly level, inclining slightly to the south. Prior to the construction of the embankment and culvert the surface water had been ordinarily diffused over the ground, doing very little, if any, injury. Plaintiff claimed, it was now gathered into a single place, and discharged through the culvert so as to injure and depreciate the. market value of his house and lot. He brought this action to recover such damages. At the trial on May 2, 1892, he had a verdict for $200. Defendant asked a new trial, but was denied, and it appeals.

*Thomas Simpson* and *Henry M. Lamberton,* for appellant.

It is not alleged or claimed that there was anything wrongful in the mode of constructing the embankment, culvert or ditches, that the ditches were either too large or too small, or were unskillfully or badly constructed, or that the embankment was too high or too low, or too large or too small, or that it was unskillfully or badly constructed; or that the culvert was unskillfully or badly constructed, or that it was improperly located, or that there should have been a greater number of culverts, or that it was insufficient in capacity; or that either the embankment, culvert or ditches, as constructed, were unnecessary to the proper construction of the railroad. The plaintiff calls in question only the right of the defendant to have the embankment, culvert and ditches there, if their effect is to accumulate surface water and cause it to flow on plaintiff's lot, where it would not otherwise flow. The law in this State as to surface water is in accordance with the common law, and is fully defined in the following cases: *Jordan* v. *St. Paul, M. & M. Ry. Co.,* 42 Minn. 172; *Lee* v. *City of Minneapolis,* 22 Minn. 13; *O'Brien* v. *City of St. Paul,* 25 Minn. 331; *Henderson* v. *City of Minneapolis,* 32 Minn. 319; *Rowe* v. *St. Paul, M. & M. Ry. Co.,* 41 Minn. 384.

There is also a recent decision of the Wisconsin court which is directly in point. *Johnson* v. *Chicago, St. P. M. & O. Ry. Co.,* 80 Wis. 641.

If the town, prior to the construction of the railroad, had graded up the streets so that the surface water would not flow along and upon the same, and thus the flow across plaintiff's lot had been increased to his injury, the town would not have been liable to plaintiff for the injury which he thereby sustained, nor would plaintiff have a right of action against the town for so. doing. *Alden* v. *City of Minneapolis,* 24 Minn. 254.

*Keyes & Brown,* for respondent.

The law applicable to the facts, as found in this case by the jury, has been several times considered and declared by this court, and was stated by the learned Judge in his charge to the jury. It has been developed in this State under a gradual process of inclusion

and exclusion through the following cases, besides those cited by defendant: *Hogenson* v. *St. Paul, M. & M. Ry. Co.*, 31 Minn. 224; *Township of Blakely* v. *Devine*, 36 Minn. 53; *Pye* v. *City of Mankato*, 36 Minn. 373; *Beach* v. *Gaylord*, 43 Minn. 476; *Follmann* v. *City of Mankato*, 45 Minn. 457.

In this case if the defendant has, by means of its ditches and culvert, cast surface water upon the premises of the plaintiff, in increased and injurious quantities, it is liable for the damage inflicted, and it is immaterial that the ditches and culvert were necessary to the operation of the road, and that they were carefully constructed. *Staton* v. *Norfolk & C. R. Co.*, 111 N. C. 278; *Jenkins* v. *Wilmington & Weldon R. Co.*, 110 N. C. 438.

GILFILLAN, C. J. The defendant constructed its road, running from east to west, across block 2, in the village of Utica, in this state. For the purpose of laying its track, it raised an embankment across the block, taking the earth from along each side, thus making on each side what is called a "borrow pit." The two pits were connected by a culvert through the embankment. On the north side the surface of the ground slopes for a considerable distance towards this part of the embankment from the north and northeast and northwest, so that the surface waters from rains and melting snows flow towards that part of the embankment, and before it was there, flowed over the lands to the south and east. The effect of the embankment was to stop the flow of surface water in a diffused manner over the surface of the ground to the south; to gather it into the north borrow pit, from which it flowed through the culvert to that on the south side, and from that, at its lower or easterly end, it flowed in a stream upon plaintiff's lot in the same block. It is to be assumed, for the purpose of the point involved, that the presence of the embankment, culvert, and borrow pits was the cause of the water flowing in a stream on plaintiff's land, and that no such quantity of surface water would have reached his land but for their existence.

No question is made of the defendant's right to make the embankment, culvert, and borrow pits, nor is it claimed that they were not necessary to the construction of the railroad in the usual

way of constructing railroads over similar ground, nor is any negligence in the manner of doing the work seriously claimed.

The case was, in effect, left to the jury, upon the proposition (upon which respondent's counsel squarely present their case here) that if the embankment, culvert, and borrow pits, though carefully made, and necessary to the construction and operation of the road, caused the surface waters to accumulate and flow in a stream, as they would not have done had not the natural surface of the ground been disturbed, upon plaintiff's land, doing damage, the defendant is liable.

The question of the rights of landowners in respect to surface waters has, in one form or another, been many times before this court. From the memorandum of the learned judge who tried the cause, it is apparent that he misapprehended to some extent the decisions of this court on the subject. We are not surprised that he did so, for in some of the opinions are expressions which, disconnected from the facts of the cases in which they were written, would point to the conclusion at which he arrived. This makes it proper to analyze most of those decisions.

The civil-law doctrine of servitudes in respect to surface waters has never been admitted in this state. Nor has the common-law rule been admitted, in the rigorous form in which it has been expressed by some text writers and decisions. Surface water has been styled a common enemy, which every landowner may get rid of as best he can, and every owner must guard against as best he may. We have held that each owner's absolute liberty in respect to such waters must be modified by the maxim that each must so enjoy his own as not unnecessarily to injure another's.

In *O'Brien* v. *City of St. Paul*, 25 Minn. 331, an attempt was made to state the rule on the subject thus: "An owner may improve his land for the purpose for which such land is ordinarily used, and may do what is necessary for that purpose. He may build upon it, or raise or lower its surface, even though the effect may be to prevent surface water which before flowed upon it from coming upon it, or to draw from adjoining land surface water which would otherwise remain there, or to shed surface water over land on which it would not otherwise go." Any more restricted rule

than this would be likely to seriously interfere with the proper improvement and enjoyment of lands. Every landowner must hold his own land subject, so far as surface waters are concerned, to whatever effect on his land the proper improvement and enjoyment of their land by his neighbors may have. In that case the court declined to decide whether in any case an owner can lawfully improve his own land in such a way as to cause the surface water to flow off in streams on the land of another, but it did decide that he may not do so unless it be necessary to the proper improvement and enjoyment of his own land, and, because the defendant had done so without such necessity, it held the plaintiff entitled to recover. *Jordan* v. *St. Paul, M. & M. Ry. Co.*, 42 Minn. 172, (43 N. W. Rep. 849,) is the only case in which the facts presented, so that it had to be decided, the question which the court declined to decide in the *O'Brien* Case. It was a case where, as an incident or necessary consequence of properly constructing the defendant's railroad, the surface waters were collected in a ditch, and flowed in streams, in increased and injurious quantities, on plaintiff's land. The court held it came within the rule stated in the *O'Brien* Case, and that plaintiff could not recover. In *Hogenson* v. *St. Paul, M. & M. Ry. Co.*, 31 Minn. 224, (17 N. W. Rep. 374,) the only attempt by defendant to improve its own land was by collecting the surface waters naturally resting on it, and, by means of ditches, conducting them to, and depositing them on, the land of the plaintiff. It was held plaintiff could recover. The court referred to the rule in the *O'Brien* Case, but held that one may not improve his own land by merely transferring to the land of another a burden which nature has imposed on his own. In reference to that decision the court, in the *Jordan* Case, said: "It is only where such shifting of the burden follows as an incident to using or improving his land, as such land is ordinarily used or improved, that it can be justified." *Township of Blakely* v. *Devine*, 36 Minn. 53, (29 N. W. Rep. 342,) was a case where the town authorities, for the purpose of relieving a highway from surface waters collecting on it, made ditches to conduct such waters to and discharge them on the land of the defendant, and he had constructed an embankment to prevent the waters flowing

on his land. The action was to restrain him from so preventing them. No question of liability of the town was in the case. The court stated the question as follows: "The material question would seem to be the right of the defendant to protect his land from the overflow of the surface water collected in the highway, chiefly as the result of heavy rains." The town authorities were really endeavoring, in the action, to impose a servitude on the defendant's land, and maintain it as dumping ground for waters collecting on the highway, and the court·held they could not do this. In *Pye* v. *City of Mankato*, 36 Minn. 373, (31 N. W. Rep. 863,) the defendant, in improving a street, had constructed a gutter to collect and convey to the river surface water which had previously, following a natural depression in the ground, flowed across the street, which gutter was "negligently and wrongfully constructed, wholly insufficient in capacity to contain and carry off the water, and as a consequence it overflowed, and was cast in large and injurious quantities upon, the land of plaintiff." The negligent and wrongful constructing of the gutter could not be deemed doing what was necessary to the proper improvement of the street. The opinion states five propositions as to the liability of a municipal corporation in respect to surface waters in grading its streets. The fifth is as follows: "But a city will be liable if it collects and gathers surface water by artificial means, such as sewers and drains, and casts it upon the premises of another in increased and injurious quantities. Such an act amounts to a positive trespass." As applied to and explained by the facts of the case then in hand, the proposition was correct, though as a general rule applicable to a landowner in improving his land for the purposes for which such land is ordinarily used, it may be criticised as not sufficiently guarded and qualified. The proper qualification of it is given at the end of the opinion, in stating the reason for the defendant's liability, thus: "Having intercepted the natural flow of this water, undertaken to gather up and conduct it in another direction by an artificial channel, it was incumbent on the city to use *reasonable care* to do this in such a way as not to cause a positive trespass upon the lands of others. To fail to do this is negligence. Such was the fact in this case, and this brings it within the cases last cited." As

thus qualified the proposition is within the rule in the *O'Brien* Case, for that rule does not admit of a landowner causing damage to the land of others by the negligent manner in which he improves his own land. *Rowe* v. *St. Paul, M. & M. Ry. Co.,* 41 Minn. 384, (43 N. W. Rep. 76,) was a case of obstructing and setting surface waters back upon plaintiff's land. The only point decided was that a landowner, in improving his own land, is not obliged to provide for the passage of such waters as previously flowed from other land upon and over his own. Though there were no facts in the case calling for it, the opinion says, speaking of an owner's rights with respect to surface water, "he is not permitted to collect in a stream or body, and turn it upon the lands of others, to their injury;" citing the *Hogenson* and *Township of Blakely* Cases. *Follmann* v. *City of Mankato,* 45 Minn. 457, (48 N. W. Rep. 192,) was, like that of *Pye* v. *City of Mankato,* a case of negligence. The opinion in one place says: "If the result of improvements actually made is to collect such water in a stream, and turn it thereon, [on the land of another,] to the damage of the owner, an action will lie." This expresses more nearly than language found in any other opinion of this court the proposition decided by the court below in this case. But it was not necessary to the decision of the case, for later in the opinion the court, after referring to certain acts of negligence on the part of defendant, says: "And in respect to the particular jury complained of the evidence is sufficient to show that it was due to an invasion of surface water, traceable to the acts and negligence above specified." The opinion in *Beach* v. *Gaylord,* 43 Minn. 476, (45 N. W. Rep. 1095,) contains a similar unguarded statement, though that was a case where the injury did not follow as a necessary incident to the owner's proper improvement of his land. The action was for damage to plaintiff's premises by defendant gathering the rain water falling upon the roof of his house into a gutter, in which it flowed to a pipe which discharged it—of course, in a stream—upon the ground so near plaintiff's line that it flowed in an increased quantity at that point upon her lot, doing damage. It was found as a fact by the court below that there was no apparent necessity for so doing, in the

proper improvement and enjoyment of defendant's own land, so that the case was really like that upon which the court held the defendant liable in the *O'Brien* Case.

From this review of the cases, it is apparent that the *Jordan* Case is the only one before this court in which was distinctly presented for decision the point involved in the proposition upon which the trial court left this case to the jury. For the sake of precision, we will restate the question: When an owner improves his land for the purpose for which such land is ordinarily used, doing only what is necessary for that purpose, and being guilty of no negligence in the manner of doing it, is he liable because, as an incident of so improving, surface waters accumulate and flow in a stream upon the lands of others? A doubt upon this was suggested in the *O'Brien* Case. But on more mature consideration we are of opinion that the owner so improving is not liable. The rule stated in that case has frequently been quoted in other cases in this court, and its correctness has never been questioned; and, but for the doubt suggested in that case, we do not think it would have been questioned that a case like this comes within it. One's land may be incidentally, even seriously, injured in value and usefulness by the proper improvement of adjacent land, withdrawing from it surface waters, the presence of which may improve its fertility and value, or shedding upon it surface waters which would not otherwise go there, and drowning it, or otherwise impairing its value, or causing such waters to remain upon it, although their presence may render it comparatively valueless, and no action will lie. When the injury is incidental to the proper improvement of adjacent land, it is impossible to see that the manner in which such improvement operates to cause the injury—whether by drawing off the waters, or setting them back so that they cannot flow off, or causing them to run either in a diffused manner or in streams—can make any difference with the liability. If a man's land be injured to the extent of $500 by surface water coming upon it, it would seem illogical and unreasonable that he may recover if it comes in streams, but cannot recover if it come in a diffused manner. The test of liability must be, is the injury incidental to another man doing on his own land what he has a right to do, i. e. improve it for

the purpose for which such land is ordinarily used, doing what is necessary for that purpose? It must, however, be understood that one cannot improve his own land by merely transferring waters which would naturally rest upon it to the land of another..

Order reversed.

VANDERBURGH, J., took no part in this decision.

(Opinion published 55 N. W. Rep. 123.)