## The Inhabitants of the Township of Hamilton

*v.*

## Daniel Wainwright.

1. The owner of land abutting upon a highway will be restrained by injunction, prayed for by the inhabitants of the township, from obstructing a culvert placed in the highway at a point where falling rains and melting snows would collect and flow to and upon the defendant's land if no highway were there, and which, without such culvert, causes the highway to become miry, founderous and out of repair.

2. Whatever may be the rights of the owners of lower tenements, as against upper tenements, with respect to surface-waters, the rights of public authorities who have charge of highways and are responsible for their maintenance in good condition, to secure the flow of such waters according to the laws of gravity and as the natural condition of the surface of the earth would indicate, are clear.

3. The inhabitants of a township, asking the aid of a court of equity, must come with clean hands.

4. Equity will not aid the inhabitants of a township, by injunction, against the owner of land abutting upon a highway, restraining him from obstructing a culvert located to carry off surface-water which would naturally flow on to the defendant's land if there were no highway there, when it appears that the inhabitants have contributed to materially increase the flow of that water by widening and deepening a gutter along the highway so as to more effectually conduct the waters which are used at and discharged from a manufacturing establishment.

On final hearing on pleadings and proofs.

*Mr. John Sykes* and *Mr. William M. Lanning*, for the complainant.

*Messrs. Barton & Dawes*, for the defendant.

Bird, V. C.

This suit is brought by the inhabitants of the township of Hamilton to restrain the defendant from obstructing a culvert which the inhabitants caused to be placed in the highway for the purpose of conducting the waters which accumulate there

from falling rain and melting snow across said road.   The testimony shows that at the place where the culvert is located there was such a natural depression in the surface of the earth as that, if there were no road there, the waters so accumulating would flow in the direction in which they are conducted by the culvert when it is not obstructed.   Since the obstruction of the culvert causes the highway, in case of heavy rains and melting snows, to become miry and founderous and out of repair, and renders the township liable to prosecution, and since Mr. Wainwright has insisted upon obstructing the said culvert as often as the township authorities have caused it to be opened, which has been frequently the case, it is very clear that the township is entitled to the relief prayed for unless some other material question presents itself for consideration.

The inhabitants of a township, being liable to be indicted should its highways become founderous and out of repair, and to prevent such result they construct a culvert in the highway for conducting all surface-water at a place where the natural depression of the earth's surface is such that all surface-water would accumulate and flow across the place where such culvert is located, in case there was no highway there, and without such culvert would cause the highway to become miry, founderous and out of repair, and an adjoining owner insists upon obstructing said culvert as often as the inhabitants cause it to be opened, they, having a special interest in the highways because of their liability beyond the public at large, are justified in asking the aid of this court by injunction.   *Inhabitants of Greenwich* v. *Easton and Amboy R. R. Co., 9 C. E. Gr. 217;  Township of Raritan* v. *Port Reading R. R. Co., 4 Dick. Ch. Rep. 11; Jersey City* v. *Central R. R. Co., 13 Stew. Eq. 417;  1 High Inj.* (*3d ed.*) § *759.*

Counsel for defendant insisted that since these waters were only accumulations of falling rain and melting snow, the doctrine laid down in the case of *Bowlsby* v. *Speer, 2 Vr. 351,* which is to the effect that the owner of an inferior or lower tenement may obstruct the flow of such waters, whatever the damage may be, is applicable here and should control this case.   It needs no ex-

tended argument to show that the rights of the parties in this case are radically different from the rights of two private individuals similarly situated. The public have the right to have all highways maintained in good repair, and the duty to so maintain them is imposed upon the township, for the neglect of which it is liable to be indicted.

It is insisted upon the part of Mr. Wainwright that if, upon the facts above presented, the court should conclude that the township is entitled to equitable relief, yet there are other facts which show that the township authorities have so far by their conduct contributed to the mischief which results from the flow of this water as to deprive them of a favorable consideration in a court of equity. Not far from the place where the culvert is located, and on the side of the highway opposite to Mr. Wainwright, is a manufacturing establishment called a rubber mill, which discharges almost constantly a very large quantity of water directly into the gutter on the south side of the highway, which is opposite to Mr. Wainwright's land. About eight years ago the gutter on the side of the road next to the mill had become nearly filled up. The township authorities caused the gutter to be opened and deepened several inches, from the culvert or from near thereto to the rubber mill, for the purpose of permitting the water running from said mill more freely to flow along said gutter. The evidence makes it clear that several inches of water are constantly flowing in this gutter towards the culvert, and must to that extent increase the quantity of water accumulating at the point where the culvert is, and necessarily increase the quantity cast upon Mr. Wainwright when that culvert is unobstructed.

The well-established principle that the complainant must come into court with clean hands is applicable here. While it is unquestionably true that the township had the same right under the law to open and to keep open this gutter on the side of the highway for the purpose of maintaining the highway in proper repair, notwithstanding the location of the rubber mill and the fact that the waters which it used were cast into the gutter on the highway without any liability whatever on the part of the

township, but without any abridgment of their rights as against Mr. Wainwright or others, had the township done nothing more,. yet when the township not only makes the ordinary or usual repairs in the gutter, but expressly directs the gutter to be "widened and deepened" for the purpose of more effectually carrying off the water from the rubber mill, it takes a step which is not authorized by any act of the legislature nor by any consideration of public policy. Private individuals have no right to impose such burdens upon the public highway, nor have the public authorities any right to aid them or to encourage them in their attempts to do so. Nothing can be plainer than that it was the duty of the township to prevent the rubber mill from using the highway for any such purpose, rather than to devise means by which another private individual might be injured. This action upon the part of the township puts them in the wrong.

Therefore, the defendant was justified in resisting the additional burden thus cast upon his premises, even though in doing so the public suffer to the extent of having the highway made founderous and out of repair. Such encroachments upon private rights cannot be justified, whether made by many or by few, by a single individual or the body politic. Nor does an intermixture of good with the evil sanctify the whole. I think the utmost limit to which the authorities extend is, as between private individuals, that the owner of the dominant or superior tenement may make ordinary and reasonable improvements to his lands, and if in so doing he increases the natural flow of water upon and across the servient or inferior tenement, the latter cannot complain, unless such increase works actual damage.

This general view of the rights of private individuals, when their lands adjoin and the surface-waters naturally flow from the one to the other, is sustained by the following authorities: *Boynton* v. *Longley, 19 Nev. 69 ; Rhoades* v. *Davidheiser, 133 Pa. St. 226 ; Gregory* v. *Bush, 64 Mich. 37 ; Rowe* v. *St. Paul, M. & M. R. R. Co., 41 Minn. 384; Martin* v. *Jett, 12 La. 501 ; Kauffman* v. *Griesemer, 26 Pa. St. 407.*

While a reasonable application of the rule expressed in the foregoing authorities may be regarded as just and equitable,.

neither the rule nor the authorities so cited give any countenance whatever to the action of the inhabitants of the township in facilitating the flow of the waters from the rubber mill along the gutters of the highway to the culvert which, when open, will conduct them to the lands of the defendant. Many cases may be presented which must be considered one way or the other because of peculiar features or circumstances in connection therewith. And while it may be said that all corporate bodies which have control of streets and highways may construct and repair such streets and highways without regard to the consequences to private individuals resulting from the damming up and precipitation of surface-water, yet I apprehend that almost every well-considered case disapproves the right of such authorities to pursue a course of construction or repair which will result in the collection of large quantities of mere surface-water, and especially of water which is used by a private individual in manufacturing his wares, and diverting them from the channels or courses in which they would naturally flow and conducting them to the lands of a private individual. *Soule* v. *Passaic, 2 Dick. Ch. Rep. 28 ; Miller et al.* v. *Mayor &c., 2 Dick. Ch. Rep. 62 ; Field* v. *Inhabitants of Township of West Orange, 9 Stew. Eq. 118 ; S. C., 10 Stew. Eq. 600 ; Noonan* v. *City of Albany, 79 N. Y. 470 ; Haskell* v. *City of New Bedford, 108 Mass. 208 ; Brayton* v. *City of Fall River, 113 Mass. 218 ; Byrnes* v. *City of Cohoes, 67 N. Y. 204, 205 ; Rychlicki* v. *City of St. Louis, 98 Mo. 497 ; Pettigrew* v. *The Village of Evansville, 25 Wis. 223 ; Davis* v. *City of Crawfordsville, 119 Ind. 1 ; Krug* v. *St. Mary's Borough, 152 Pa. St. 30 ; Sleight* v. *Kingston, 11 Hun 594 ; Clark* v. *Rochester, 43 Hun 271 ; Gillison* v. *City of Charleston, 16 W. Va. 282 ; O'Brien* v. *St. Paul, 25 Minn. 331.*

The fact that there are surface-waters which the inhabitants of the township have a right to carry off by the gutter made for that purpose to this culvert, and thence upon the lands of the defendant, does not justify them in increasing the flow of such waters by the addition of the waste-water from the rubber mill, is clearly established by the case of *Soule* v. *Passaic, supra.* In that case the land of the complaining party was already burdened

with a running stream from other sources. *Moran* v. *McClearns, 63 Barb. 185.*

The principle involved in these cases controlled the court in the case of *Slack* v. *Lawrence Township, 19 Atl. Rep. 663; Rathke* v. *Gardner, 134 Mass. 14.*

I think that the fundamental principle is found in the constitutional right of the citizen to be protected in his private property against any invasion or encroachment, although public interests be involved, until just compensation be made to him, and that there can be no limitation of this right even by legislative enactment. *Ward* v. *Peck, 20 Vr. 42.*

None of these authorities are in the slightest degree in conflict with the doctrine first above laid down, that the township has the right to maintain and preserve the flow of the surface-water in the same manner and to the same extent, for the maintenance and proper repair of the highway, that such water would flow in case there was no highway there.

The bill should be dismissed, with costs, and I will so advise.