JOHN C. McCLURE *vs.* CITY OF RED WING.

July 28, 1881.

**Obstruction of Natural Water Channel by City, and Attempted Diversion of Water into a Sewer.**—Within the city of Red Wing is a ravine, some three rods wide, on either side of which is a hill, 15 or 20 feet high. In the bottom of this ravine is a well-defined natural channel or watercourse from six to eight feet wide, and from four to five feet deep. Into the ravine enter two other ravines, each about a mile and a half long. The surface of the country drained by these ravines is hilly and broken. In time of rains or melting snows, all the water from this tract of country flows down the first-named ravine, following the watercourse or channel referred to, and emptying into the Mississippi river. This is its only outlet. In time of heavy rains or storms, the volume of water is often

large and rapid. In the absence of snow or rain, this channel is usually dry. The city of Red Wing laid out and graded a street along and across this ravine, and in doing so dammed up and obstructed the natural channel for this water, and undertook to divert it into a sewer which they constructed under the street. Subsequently, in the case of a heavy storm, this sewer proved wholly inadequate to receive the whole of the water, and, as a consequence, it flowed down the surface of the street in large and destructive quantities upon the premises of the plaintiff, which it would not have reached but for the aforesaid acts of defendant. *Held*, 1. That whether this be "a natural watercourse," within the legal meaning of that term, or mere "surface water," it has many of the characteristics of the former, and must be governed to a certain extent by the rules of law applicable to natural watercourses, and the rules usually applicable to ordinary surface water cannot be applied to such waters without material modifications. No one has the right to obstruct or divert the flow of such water from its natural channel, so as to cast it upon the lands of others.

**Same—Duty and Liability of City in Construction of Sewer.**—2. That it was incumbent upon the defendant, in laying out and grading this street, if it deemed it necessary to obstruct the natural channel and to divert the flow of water therefrom into a sewer, to use reasonable care, skill and judgment in providing and constructing such sewer, so as to make it adequate and sufficient to carry off the water so that it would not be cast upon the property of others to their injury; and if it failed to use such reasonable care, skill and judgment, and injury to others ensue therefrom, it would be liable; that, under the evidence, the court should have submitted this case to the jury, to determine whether or not the defendant exercised such reasonable care and skill, and erred in dismissing the action.

**Tax-payer in a City a Competent Juror.**—A statute making a resident or tax-payer of a municipal corporation a competent juror in all cases in which such corporation is a party, does not impair the right of trial by jury guarantied by section 4, art. 1, of the constitution of Minnesota.

Appeal by plaintiff from an order of the district court for Goodhue county, *Crosby,* J., presiding, refusing a new trial. The case is stated in the opinion.

*J. C. McClure,* for appellant.

The city had no right to divert the water from its natural course, and is answerable for the consequences, the same as a private individual. *Ashley* v. *City of Port Huron*, 35 Mich. 296; *Pennoyer* v. *City of Saginaw*, 8 Mich. 534; *Smith* v. *City of Milwaukee*, 18 Wis. 63; *Adams* v. *Walker*, 34 Conn. 466; *Hooker* v. *New Haven & Northampton Co.*, 14 Conn. 146; *Martin* v. *Riddle*, 26 Pa. St. 415; *Miller* v. *Laubach*, 47 Pa. St. 154; *Pumpelly* v. *Green Bay Co.*, 13 Wall. 166; *Child* v. *City of Boston*, 4 Allen, 41; *City of Indianapolis* v. *Huffer*, 30 Ind. 235; s. c. 2 Withrow Corp. Cas. 227; *Rochester White Lead Co.* v. *City of Rochester*, 3 N. Y. 463; *Inman* v. *Tripp*, 11 R. I. 520; 17 Albany L. J. 12; Washburn on Easements, 226, 353–356; Cooley Const. Lim. 248. The case is directly within the principle of *O'Brien* v. *City of St. Paul*, 25 Minn. 331.

The defendant was bound to construct the street and sewer in a proper, cautious, careful and skilful manner, and in such way as to effectually care for and carry off the water that naturally passed through the channel, and is liable for all damages resulting from its failure to do so. *Meares* v. *Town of Wilmington*, 9 Ired. 73; *Perry* v. *City of Worcester*, 6 Gray, 544; *Rowe* v. *Granite Bridge Co.*, 21 Pick. 344; *City of Indianapolis* v. *Huffer*, *supra*; Cooley Const. Lim. 248. And the question of negligence should have been submitted to the jury. *City of St. Paul* v. *Kuby*, 8 Minn. 125 (154;) *Chamberlain* v. *Porter*, 9 Minn. 244 (260;) *Johnson* v. *Winona & St. Peter R. Co.*, 11 Minn. 204 (296.)

*F. M. Wilson*, for respondent.

The evidence does not tend to show an obstruction of a natural watercourse, within the legal definition of that term. *Hoyt* v. *City of Hudson*, 27 Wis. 656; *Luther* v. *Winnisimmet Co.*, 9 Cush. 171; Washburn on Easements, 209, 210; Goddard on Easements, 241; Wood on Nuisances, 311–314; Cooley on Torts, 578; Angell on Watercourses, §§ 4, 5.

The duty of providing drainage or sewerage for surface water is in its nature judicial or *quasi* judicial. 2 Dillon Mun. Corp. § 801; *Wilson* v. *Mayor of New York*, 1 Denio, 595; *Governor, etc.*, v. *Meredith*, 4 Term Rep. 794; *Mills* v. *City of Brooklyn*, 32 N. Y. 489. An

action will not lie for wholly failing to provide drainage or sewerage; 2 Dillon Mun. Corp. §§ 753, 801; 2 Thompson on Negligence, 731; Cooley on Torts. 620; Wharton on Negligence, 260; Cooley Const. Lim. 208; nor for any defect or want of efficiency in the plan of sewerage. *Child* v. *City of Boston,* 4 Allen, 41; *Hill* v. *City of Boston,* 122 Mass. 344; 2 Dillon Mun. Corp. § 801, and cases cited; nor for insufficient size or want of capacity of gutter or sewers. *City of Atchison* v. *Challis,* 9 Kan. 603; *Carr* v. *Northern Liberties,* 35 Pa. St. 324; *Roberts* v. *City of Chicago,* 26 Ill. 249; *Darling* v. *City of Bangor,* 68 Me. 108; *Fair* v. *City of Philadelphia,* 88 Pa. St. 309; *Grant* v. *City of Erie,* 69 Pa. St. 420; *City of St. Louis* v. *Gurno,* 12 Mo. 414; *Imler* v. *Springfield,* 55 Mo. 119; 2 Dillon Mun. Corp. § 801.

A city is not liable for an injury to private property caused by the insufficiency of the sewer during an extraordinary flood. *City of Madison* v. *Ross,* 3 Ind. 236; *Sprague* v. *City of Worcester,* 13 Gray, 193; *Parker* v. *City of Des Moines,* 53 Iowa, 679. Nor is it liable for damages resulting to a lot owner from surface water caused by the improvement of a street in accordance with the established grade, (*Alden* v. *City of Minneapolis,* 24 Minn. 254; *Imler* v. *Springfield,* 55 Mo. 119,) unless the power has been abused by unskilful execution. Mills. on Em. Domain § 195; 5 South. Law Rev. 96.

The council, and not the judicial tribunals, is to judge of the necessity and propriety of the improvement. To leave this question to a jury would embarrass and often defeat any just and intelligent system of grading and drainage. *Carr* v. *Northern Liberties,* 35 Pa. St. 324; *Kavanagh* v. *City of Brooklyn,* 38 Barb. 232; *Cotes* v. *City of Davenport,* 9 Iowa, 227; *Snyder* v. *Town of Rockport,* 6 Ind. 237; *Lambar* v. *City of St. Louis,* 15 Mo. 610; *City of Detroit* v. *Beckman,* 34 Mich. 128.

The city may be liable for a failure to exercise judgment at all, but not for an error of judgment, (*Hume* v. *Mayor of New York,* 47 N. Y. 639;)—for defective execution of the plan of a public work, but not for a defective plan. *City of Detroit* v. *Beckman,* 34 Mich. 125; *City of Lansing* v. *Toolan,* 37 Mich. 152; 5 South. Law Rev. 90; 2 Thompson. on Negligence, 731, 735

MITCHELL, J.   Action for damages to plaintiff's real property, resulting from the alleged negligence and wrong of defendant.   When plaintiff rested his case, the court, upon motion of defendant, under plaintiff's objection, dismissed the action.   Plaintiff appeals from an order refusing a new trial.   The evidence introduced by plaintiff upon the trial tended to prove the following facts: (This evidence will be better understood in connection with the annexed plat, Exhibit A,* which was also received in evidence as being a correct map or plat of the property in question and its surroundings.)   Lots 1 and 2, block 7, marked A, are the premises of plaintiff.   Southerly from these premises, there is a ravine, as indicated on the plat, running from

*EXHIBIT A.

Bush street, diagonally, in a north-easterly direction to Seventh street, and thence to the Mississippi river. This ravine is some three rods wide. On each side of it is a hill or bluff, 15 to 20 feet high. Through this ravine, before the laying out and grading of the street hereinafter mentioned, was a watercourse, or channel, some six or eight feet wide, and from four to five feet deep, indicated by the arrows. Into this ravine, from the south-west, enter two other ravines, each about a mile and a half long. All the water that came down these two last-mentioned ravines, from rains and melting snows, flowed into the first-named ravine, and followed the well-defined channel indicated by the arrows, and passed on down into the river. This was the only means of escape. This water, in times of heavy rains, frequently formed quite a large and rapid stream, but, when allowed to follow its natural channel or course, it passed at some distance from plaintiff's property. The surface of the ground drained by these ravines was hilly, and the ravines large. In 1878, the city of Red Wing laid out, opened and graded a street down and across this ravine, known as the "Plum-street extension," the easterly line of which is marked B B, and the westerly line C C. It will be observed that the lines of this street crossed the channel or watercourse in this ravine, first at D, and again at I and F. When the street in question was graded, this channel, at D, was entirely filled up, and a dam, five or six feet high, built across it from D to Bush street, thus entirely preventing the water from following the natural channel. The city then constructed a sewer on this street, indicated by the dotted line in the street, running from the bridge across Bush street, down the street, and again coming out into the natural channel at F. This sewer was three and a half feet wide, and four and five-sixths feet high, but entirely inadequate in capacity to receive or carry off the volume of water which frequently came down the ravine in case of heavy rains or storms. The surface of the street was not made level, but was considerably higher on the west side, and sloping towards the east. A stone and earthen dam was built on the easterly line of the street at F, so that water flowing down on the street was prevented from passing off the street, at F, into the channel in the ravine. From the bridge, on Bush street, to E, there is a depression across the street, so that water

that does. not pass through the sewer is all thrown over towards the easterly side of the street. The result of these acts of the city was that, in case of heavy rains, more water came down the ravine than could pass through this sewer, and accumulated at the mouth of the sewer K, and then ran down upon and along the whole length of the street, and, being prevented from re-entering the natural channel at F, by reason of the dam at that point, flowed on down to G, and across Seventh street, upon the premises of plaintiff, in large and destructive quantities, and produced the injury complained of. The evidence, we think, also fairly tends to show that this sewer was not of such a size as might reasonably have been considered sufficient to carry off the volume of water that might naturally have been anticipated at times to flow through this ravine, judging from its past history. It will be observed from the foregoing that the injury complained of was caused by the acts of the defendant city in obstructing the natural channel for this water, and in failing to provide another outlet for it of adequate capacity.

Owing to the vast number of adjudicated cases on the subject, and their frequent conflict with each other, the whole subject of the liability of municipal corporations for injuries to private property, in consequence of being overflowed with water, caused by improvement upon streets, is involved in no little obscurity. It would be useless to attempt to consider all the cases on that subject, or to attempt to reconcile them. On principle, we believe that, so far as the circumstances of the case and public necessity will permit, the same rules should be applied to such corporations, in the management and improvement of their streets, as would be applied to a private individual, in the management and use of his private property. Such a rule would have a salutary effect in inducing care on the part of municipalities to avoid injuries to private property, and would operate justly in giving redress to private persons if such injuries are inflicted. We do not deem it necessary to determine whether this was a "natural watercourse," or mere "surface" water, under the legal definitions of these terms. If it be surface water, the general common-law doctrine that neither the retention nor repulsion of surface water is an actionable injury must necessarily be materially modified

in such cases. In a broken and bluffy region of country, like that part of south-eastern Minnesota adjacent to the Mississippi river and its tributaries, intersected by long, deep coolies or ravines, surrounded by high, steep hills or bluffs, down which large quantities of water from rain or melting snow rush with the rapidity of a torrent, often attaining the volume of a small river, and usually following a well-defined channel, it would be manifestly inappropriate and unjust to apply the rules of the common law applicable to ordinary surface water. In many respects such streams partake more of the nature of natural streams than of ordinary surface water, and must, at least to a certain extent, be governed by the same rules. *Bowlsley* v. *Speer,* 31 N. J. Law, 351; *Grand Junction Canal Co.* v. *Shugar,* L. R. 6 Ch. App. 483.

The true rule to adopt in such cases is that no one has a right to obstruct or divert such waters so as to cast them upon the property of others to their injury. When, in the judgment of a municipal corporation, it becomes necessary, in making a public improvement, to obstruct the natural channel of such a stream, or to divert it into a sewer or other artificial channel, it is bound to provide adequate and proper culverts, sewers, or other artificial channels to carry off the water without injury to the property of others, and to exercise reasonable skill, care and judgment in so doing; and if they fail to exercise such reasonable care, skill and judgment, they will be liable if injury ensues to others. They have no absolute right in such cases to dam up the natural channel, and divert the water by artificial means upon private property. If any such right is necessary for public purposes, they must obtain it by the exercise of the right of eminent domain, as in any other case of taking private property for public uses. *O'Brien* v. *City of St. Paul,* 25 Minn. 331; *Van Pelt* v. *City of Davenport,* 42 Iowa, 308.

But defendant's contention is that, in determining upon the size of this sewer, the city was performing a judicial, or rather legislative, act, and is therefore not liable for an error of judgment. The distinction between judicial or legislative duties, and those that are merely ministerial, is in theory quite plain, but often very difficult

v.28—13

to apply practically. The duty of providing drainage or sewerage is in its nature judicial or legislative, and consequently a municipal corporation is not liable for mere non-action in failing to perform it. But that is not this case. It has also been held that, in adopting the *general plan* of an improvement, a municipality performs a legislative duty, whereas the manner of executing it is a ministerial one. In the case at bar, if it turned upon whether the duty was judicial or ministerial, we think the correct rule to apply would be that, in deciding upon the expediency of laying out this street, or upon the route thereof to be adopted, or the grade to be established, the city was exercising judicial duties, for errors of judgment in the performance of which they would not be responsible; but, having determined these matters, and having decided it expedient to obstruct the natural channel of these waters, and to divert them into another and artificial channel, then, in executing and carrying this out, including the construction of the sewer and fixing upon its size or capacity, they were exercising purely ministerial duties, in the performance of which they are held to the exercise of reasonable care.

In the present case it is not merely a failure to construct a sewer of sufficient capacity to carry off surface water that is complained of, but the positive act of casting the water upon plaintiff's premises, by obstructing its flow in its natural channel. This is not a mere omission to exercise a duty, nor a mere incidental injury resulting from a work which defendant had a right to perform, but a case of an injury accomplished by what amounts to an actual invasion of another's premises. The authorities nowhere recognize in municipal authorities exemption from liability, where the injury which the individual has received is a direct injury, accomplished by a corporate act which is in the nature of a trespass upon him. If a corporation send men to dig upon a man's lot, they are guilty of a trespass. But they are no more liable in such a case than they would be if they poured upon his land a flood of water, by damming up its natural channel, or by diverting it into an artificial channel in such a way that the flooding will be a necessary consequence. The distinction, in principle, is quite clear between a case where the act complained of must neces-

sarily cause an injury to private property, equivalent to an appropriation of some enjoyment thereof to which the owner is entitled, and a case where fault is found simply with the plan of the improvement as not the most wise and prudent one to protect against accidents or mere incidental injuries.

Now, in the present case, it is not mere non-action on the part of defendant in providing sewers that is complained of, nor is it merely the adoption of an imperfect system of sewerage, but it is of a positive invasion of plaintiff's premises, by obstructing the natural flow of the water, and diverting it into artificial channels, in such a manner as to cast it in large and destructive quantities upon plaintiff's land. Such an act has always been held actionable. *City of Detroit* v. *Beckman*, 34 Mich. 125; *Ashley* v. *Port Huron*, 35 Mich. 296; *Pettigrew* v. *Village of Evansville*, 25 Wis. 223; *Van Pelt* v. *Davenport*, 42 Iowa, 308; *O'Brien* v. *City of St. Paul*, 25 Minn. 331. Of course such liability would result only from the lack of reasonable care or skill on the part of the corporation. They are not insurers of the sufficiency of the means adopted. They are not absolutely bound to provide an adequate outlet for this water. If they employed competent engineers or other agents to construct the work, and they, in the exercise of an honest judgment, constructed a sewer of such capacity that they were reasonably justified in believing, and did believe, in view of all the circumstances, it would be sufficient to carry off this water, the city would not be liable, although it might subsequently have proved insufficient. Nor were they required to anticipate extraordinary and unusual storms which would not be expected to occur in view of the past history of the country. But we think that, under the evidence given by plaintiff, the case ought to have been submitted to the jury, to determine whether or not the city exercised this ordinary and reasonable care and skill, and whether this storm was such an one as might have been reasonably expected to occur at times, or whether it was one of those unusual and extraordinary ones which ordinary foresight would not have anticipated. We, therefore, are of opinion that the court erred in dismissing the action.

One of the grounds urged upon the court below, upon the motion to dismiss, was that there was a variance between the complaint and the evidence, in that the complaint alleged the existence of a natural watercourse or channel, whereas the evidence showed that it was mere surface water.   Whether this was a "natural watercourse," according to the common-law definition of that term, or mere surface water, there was no material variance between the proof and the allegations of the complaint.   The complaint calls it "a certain natural watercourse or channel, through which the waters that fall in rains and showers upon a part of the southerly portion of the city have flowed."   This is just what the evidence showed it to be.   It certainly was a *natural*, as distinguished from an *artificial*, channel.

Another point is raised which it may be proper to determine, inasmuch as another trial will probably be had.   Plaintiff challenged certain jurors who were residents and tax-payers of the defendant city.   The court disallowed the challenges.   The charter of the city, and also the general law of the state, make a tax-payer or a resident of the city a competent juror in all cases in which the city is a party. Sp. Laws 1864, p. 204, § 5; Gen. St. 1878, c. 10, § 200.   Plaintiff contends that such statutes are in violation of the constitutional guaranty of the right of trial by a jury.   We consider the law well settled to the contrary.   Cooley on Const. Lim. 412; *Com.* v. *Reed*, 1 Gray, 472.   But, for the reasons already given, the order appealed from must be reversed.

Order reversed.