## McCord et al. v. City of Pueblo.

1. Municipal Corporations.

The rights and privileges of municipal corporations are statutory, and in the exercise of those rights and privileges, rights of individuals must be respected or the corporation will be held responsible.

2. Same.

A municipal corporation is liable for injuries caused by negligence in the construction of improvements to the same extent a private person or corporation would be, under like circumstances, for the negligent omission to discharge such duty resulting in an injury to others.

*Error to the District Court of Pueblo County.*

In this case the complaint contains three counts, all substantially the same as far as the alleged cause of action is concerned. One count from the complaint, and two short extracts from the second will be sufficient to show the allegations and supposed causes of action. It is as follows:

"For a first cause of action said plaintiffs allege that on the 9th day of August, 1889, and for a long time prior thereto, and ever since, said plaintiffs were, and have been and now are copartners, doing business under the firm name of 'McCord, Bragdon & Co.,' in the city of Pueblo, at the said county of Pueblo.'

"That on said 9th day of August, 1889, said McCord, Bragdon & Co. were in possession of, and were and still are, the owners of a valuable leasehold interest in a certain two story stone building, situated on lots 31 and 32, in block 60, at the corner of D and Main streets, in that portion of the city of Pueblo, formerly the town of South Pueblo, in said county, and the land on which the same stands, and were then and there carrying on the business of wholesale grocers, and as such wholesale grocers then and there had a large stock of goods, wares and merchandise in said building; that a portion of said goods and merchandise of the value of

twenty-five thousand ($25,000) dollars, was stored in the basement or cellar of said building on said 9th day of August, 1889.

" That ever since the month of April, 1886, said defendant has been a municipal corporation, duly organized and existing under and by virtue of the laws of the state of Colorado. * * *

" That said defendant became a municipal corporation by virtue of the consolidation of the cities of South Pueblo, the former city of Pueblo and the former town of Central Pueblo, and by virtue of the articles of consolidation, entered into by said last mentioned municipal bodies, said defendant, the city of Pueblo, undertook to construct on each side of the Arkansas river, from The Atchison, Topeka & Santa Fe Railroad Company's bridge to The Denver & Rio Grande Railroad Company's bridge, all within the limits of the city of .Pueblo, a good, substantial levee, which levee was for the purpose of protecting the property of persons in the lowlands lying on each side of said river.

" That, after the incorporation of said defendant, said defendant commenced to build a levee on each side of the Arkansas river pursuant to said articles of consolidation, and did construct a good and sufficient levee on the north side of said river, sufficient to protect the owners of property in the low lands adjacent to said river on the north side, from water or floods; but in building the levee on the south side of said river, said defendant, so negligently and unskillfully constructed the same, as to leave an opening, about one hundred and fifty (150). feet in length, near the said bridge of The Atchison, Topeka & Santa Fe Railroad Company, within the limits of said city, without any levee or protection; 'while on the north side of said river opposite said opening, there was an embankment or levee built by said defendant, some seven or eight feet higher than the natural bank of the river, on the south side of the river opposite thereto, which said embankment or levee caused the water flowing in the Arkansas river to flow through said opening, in and upon, and to

be spread over, the low lands adjacent to said river on the south side thereof; and on the 9th day of August, 1889, there having been a heavy fall of rain, a large body of water was running in said Arkansas river, such as is usual whenever the high water and freshets, which are usual at that period of the year, occur; and said waters so flowing in the Arkansas river then and there rushed through said opening, so negligently and unskillfully left by said defendant, near The Atchison, Topeka & Santa Fe Railroad Company's bridge, and inundated the cellar or basement of said building occupied by said McCord, Bragdon & Co., and destroyed and damaged the goods, wares and merchandise of said plaintiffs, in said cellar or basement stored, to the amount of $13,605.17; and put said plaintiffs to great expense and trouble in removing said water from said cellar or basement, to wit: the sum of one thousand ($1,000) dollars, and the leasehold interest of said plaintiffs was thereby greatly depreciated in value; and other damages, amounting in all to the sum of fifteen thousand ($15,000) dollars. And plaintiffs aver, that heretofore, to wit: on the 30th day of September, 1889, they presented their claim to the city council of said defendant, and requested the defendant to pay for their damages sustained as aforesaid, but said city council rejected said claim, and refused to pay plaintiffs any sum of money whatever."

And the following from the second count:

" That said defendant so negligently and unskillfully constructed said levee, as to narrow the channel of said river and make the said levee an obstruction to the water which is accustomed to flow down said river, and on the 9th day of August, there was a freshet, or large body of water flowing in said river, such as is liable to occur in any year, and such as does occur frequently and periodically in said river, which said body of water was so obstructed by said levee as to flow back around said levee on the south side of said river, and to overflow the lowlands adjacent to said river on the south side thereof, instead of passing down its accustomed channel, as it would otherwise have done; and the basement of said

building, then and there occupied by said plaintiffs, was thereby filled with water. * * *

" That, prior to the commencement of said levee, the premises above described, occupied by said plaintiffs, had never in the highest water or floods which had occurred since the erection of said building in the year 1880, been subject to overflow of water in consequence of any high water in said river."

Demurrers were filed to the complaint on the ground that they did not state facts sufficient to constitute a cause of action. After lengthy and exhaustive argument the demurrers were sustained and the action dismissed.

The errors assigned are to the judgment of the court in sustaining the demurrers and dismissing the suits.

Mr. John W. Sleeper, for plaintiffs in error.

Mr. A. M. Nicholas and Messrs. Waldron & Devine, for defendant in error.

Reed, J., delivered the opinion of the court.

The foundation of this action, as shown in the complaint, was negligence of the municipal government of the city, by which, it was alleged, the parties sustained damage. The right of a city to interfere with natural water courses within their corporate limits is given by sec. 3312, Gen. Stats., and is as follows:

" The city council and board of trustees in towns shall have the following powers:

    \*        \*        \*        \*        \*

" *Eleventh*—To deepen, widen, dock, cover, wall, alter or change the channel of water courses."

It will be seen that the privilege, the right, the power, is given to be exercised or not, at the discretion of the city. There is nothing obligatory; no compulsory legislation. Primarily, the state, in its sovereign capacity, had the power of

such control. By the act, the state, within the corporate limits of a city, divests itself of this power and confers it upon the municipality.

It is not, as supposed in argument by the learned counsel of the defendant in error, a state undertaking where the municipal authorities are the agents of the state, which presupposes specific legislation and the elaboration and adoption of plans by the state. The learned counsel say: "It (the municipality) cannot be made to respond in damages for the negligent manner in which the work was performed, because it is to be deemed as the agent of the state in the prosecution of the enterprise and in no respect to be held a principal in the transaction."

Here appears the fundamental error upon which the judgments of the court were based. The improvement had its origin and inception in the city government, for the benefit of the city. It was the principal and not the agent.

It cannot be said that the undertaking was for the profit of the city, like water, gas and that class of improvements. It appears that adjoining the river on both sides, were large bottoms of lowland subject to overflow at high water. To reclaim and utilize such land, must, if properly accomplished, greatly add to the value of taxable property. In the same section of the statute, by subdivision nine, the power is delegated by the state to the corporation "To construct and keep in repair bridges, viaducts and tunnels," etc. By the tenth subdivision: "To construct and keep in repair culverts, drains, sewers and cesspools;" and by the eleventh (the one under consideration): "To deepen, widen, dock, cover, wall, alter or change the channel of the water courses." I cannot see how the clause in question and the privileges there granted are to be distinguished from the others conferred, so as to make the municipality, after accepting and entering upon the improvement, the agent of the state, and thus escape responsibility, any more than in the exercise of any other power or privilege conferred.

The contention of counsel for defendant and the able and

exhaustive argument in its support, that negligence cannot be imputed to a state, so as to make it chargeable, are eminently correct, but the trouble is in the application. The law is well settled that when the state agency merely performs the governmental functions of the state, and acquires no individual corporate existence, to hold it responsible for negligence would be the same as holding the state responsible. The unincorporated agencies occupy the same positions as the state and are protected to the same extent; but, when any state agency becomes a municipal corporation, it thereby acquires an identity distinct from the state, and is made liable for its own negligence. See *Laramie County. v. Albany County*, 92 U. S. 307. The rights and privileges of municipal corporations are only those conferred by the legislature, and in the exercise of those rights and privileges, rights of individuals must be respected, or the corporation will be held responsible for the infraction.

The distinction between preliminary questions, the expediency of the improvement, the extent to which it shall be prosecuted and the plans adopted, for which the corporation is not responsible, and the construction of the work, after it is entered upon, appears to be well defined. In the latter, for any negligence, responsibility attaches.

In *McClure v. City of Red Wing*, 28 Minn. 186, it was ably said: "That in adopting the general plan of an improvement, a municipality performs a legislative duty, whereas the manner of executing it is a ministerial one." In many cases it has been held that a corporation was liable for the injury inflicted upon individuals, whether it arose from the adoption of a faulty plan or negligence in construction, but that is a question that need not be here determined. No charge is made in complaints that the plan was faulty. The injuries were alleged to have been caused solely by negligence of construction under the plans adopted, and when such is the fact, all authorities concur in holding the corporation liable. The law appears to be well settled that when a corporation has adopted a plan and enters upon the construction

of a public work, the work is then ministerial. The plan must be followed in detail, and any departure or negligence, causing damage to an individual, furnishes a cause of action. Jones on Neg. of Mun. Corporations, secs. 140 to 148; Dillon on Mun. Corporations, sec. 1042, *et seq.*

At sec. 1048 it is said: " It is agreed that whenever the *duty as respects drains and sewers ceases to be legislative or judicial or quasi judicial, and becomes ministerial,* then, although there be no statute giving the action, a municipal corporation is liable to the same extent and on the same principles as a private person or corporation would be under like circumstances for the negligent discharge or the negligent omission to discharge such duty, resulting in an injury to others." And a very long array of authorities are cited in support. See *Johnston v. District of Columbia,* 118 U. S. 19; *McClure v. City of Red Wing, supra; Benford v. Grand Rapids,* 53 Mich. 98; *Evansville v. Decker,* 84 Ind. 325; *City of Indianapolis v. Lawyer,* 38 Ind. 348; *Child v. City of Boston,* 4 Allen, 41; *Mills v. City of Brooklyn,* 32 N. Y. 489; *Ashley v. City of Port Huron,* 35 Mich. 296; *Weis v. City of Madison,* 75 Ind. 241; *Gilluly v. City of Madison,* 63 Wis. 518; *Frostburg v. Duffy,* 70 Md. 47; *Frostburg v. Hutchins,* 70 Md. 56; *Hans v. Bethlehem,* 134 Pa. St. 12; *Stanchfield v. The City of Newton,* 142 Mass. 110.

These are but a few of the many cases that might be cited to establish the proposition that a municipal corporation will be held liable for damage to individual property caused by negligence in the construction of public improvements.

The allegations of the complaints, in substance, are as follows:

*First:* That the defendant undertook to construct on each side of the river a levee or dyke from the bridge of The Atchison, Topeka & Santa Fe Railroad Company down to the bridge of The Denver & Rio Grande Railway Company, some eight feet high, to connect at the ends with the embankments of the respective railroads.

*Second:* That the one upon the north side was completed

according to the plan, and that upon the south side was constructed from the Denver & Rio Grande bridge up the stream to within one hundred and fifty feet of the bridge of the Atchison, Topeka & Santa Fe Railroad, when the work was stopped, leaving the gap of one hundred and fifty feet at the upper end of the ·dyke or levee.

*Third:* That in August, 1889, the stream was swollen by rain and a large volume of water came down, and that by reason of the narrowing and restricting the channel below by the construction of the embankments, the water was obstructed, forced through the space where the levee had not been constructed, flooding the property of plaintiffs, and inflicting great injury by the destruction of goods.

*Fourth:* That the building occupied by plaintiffs was constructed in 1880, and had never, in the highest floods, before the construction of the levee, been overflowed or troubled by high water.

*Fifth:* That the work had been stopped or abandoned in that unfinished condition a year or more before the injury occurred.

In my view of the law as stated above, I think the complaint stated substantial and valid causes of action, that the issues tendered should have been met, the questions of fact determined by a jury, and that the court erred in sustaining the demurrer.

The judgment will be reversed.

*Reversed.*