Reed, P. J.,
delivered the opinion of the court.
This action was brought by the plaintiff in error against the defendants in error to recover damage for the death of her husband by the caving in of a shaft on the mine of defendants while employed by them in sinking the shaft.
The part of the complaint necessary to be considered is as follows: “ While the said John W. Stiles was at work in the bottom of said shaft, a large body of earth and gravel fell from -the side thereof and instantly killed him; that the defendants and their agents and servants were grossly negligent in not having timbered said shaft and thereby prevented the same from caving in as aforesaid; that said shaft, at the time of said death, had reached a depth of twelve feet, and said deceased had, immediately preceding his death, complained to defendants of their negligence in not timbering *394 the same, and defendants had promised that the same should be immediately timbered; that defendants, in pursuance of said promise, had commenced 'the timbering of said shaft, and were in the act of doing so at the time of said injury and death of aforesaid; that at the time deceased was killed as aforesaid, he thought, and any man of ordinary prudence, with the knowledge which deceased had of the ground he was working in, would have thought, that said shaft could be timbered before it would cave in.”
Taking the allegations in the text as pleaded, the complaint states no cause of action. It is alleged that the shaft, at the time of his death, was twelve feet deep only; that deceased, immediately preceding his death, complained to defendants of their negligence in not timbering the same, and defendants had promised that the same should immediately be timbered. The complaint of deceased in regard to the insecurity of the shaft was made “ immediately before his death.” At the time of his death, he was engaged in timbering the shaft. The allegation shows immediate attention to the complaint made, and an immediate fulfillment of the promise. The rule of law evidently intended to be invoked is elementary, and is that where the employer has knowledge of the danger attending the employment, and does not communicate it to the employé, and also when the danger is discovered by the employé, and he conveys the knowledge to the employer, and he promises to remedy it, and the employé relying upon such promise continues the employment, and the employer neglects to obviate the danger, the employer is liable in damages for any injury received by the servant; but in this case the allegation negatives the liability by the statement that the employer, on being informed, immediately proceeded to remove the cause of danger.
The rule of law controlling this case is clearly and tersely stated in 2 Thompson on Negligence, 992: “If the master knew, or ought to have known, and the servant did not know, and waS not bound to know of its existence [the dan *395 ger] the liability of the master — the servant having been otherwise in the exercise of due care — -is fixed, and it is equally true, in every ease, that unless the master knew of the defect which subsequently produces the injury, or was under a duty of knowing it, he cannot be held liable; for in the absence of such knowledge or duty of knowing, there is nothing of which negligence can be predicated.” See Elliott v. St. Louis & I. M. R. R. Co., 67 Mo. 272; Hayden v. Smithville Mfg. Co., 29 Conn. 548; Toledo, etc., R. Co. v. Conroy, 61 Ill. 162; Columbus R. Co. v. Troesch, 68 Ill. 545. Again it is said in 2 Thompson on Neg., 995: “ These two things must stand in conjunction, knowledge on the part of the master, or its equivalent, negligent ignorance; and a want of knowledge on the part of the servant, or its equivalent, excusable ignorance.” See Walsh v. Peet Valve Co., 110 Mass. 23; Mobile & Ohio R. R. Co. v. Thomas, 42 Ala. 672; Union Pac. Ry. Co. v. Milliken, 8 Kan. 647; Indianapolis & C. R. R. Co. v. Love, 10 Ind. 554.
In'2 Thompson on Neg., 971 and 972, the negligence which will render the employer liable is stated as follows:
“1. Negligence in subjecting the servant to the risk of injury from defective or unsafe machinery, building, premises, or appliances.
“2. Negligence in subjecting him to the risk of injury from unskillful, drunken, habitually negligent, or otherwise unfit fellow servants.
“3. Negligence where the master, or his vice principal, personally interferes, and either does or commands the doing of the act which caused the injury.”
“In the first two cases, the unfitness of the building, premises, machine, appliance, or fellow servant must have been known to the master, or must have been such as, with reasonable diligence and attention to his business, he ought to have known. It must also have been unknown to the servant, or such as a reasonable exercise of skill and diligence in his department of service would not have discovered to him. If the master has not been personally negligent in any of these *396 particulars, and hurt nevertheless happens to the servant, the master will not be answerable in damage therefor; but the servant’s misfortune will, accordingly as the facts appear, either be ascribed to his own negligence, or ranked in the category of accidents, the risk of which, by his contract of service, he is deemed voluntarily to have assumed.” See Chicago, B. & Q. R. R. Co. v. McGraw, 22 Colo. 363. In support of these two propositions, almost numberless authorities are cited from nearly all the different states.
The facts, as shown by the very meager evidence of Murdock Smith, who was the only witness who had any knowledge of the facts, were that defendants employed him to sink the shaft, authorized him to hire his own men to do the work. He employed the deceased. Witness had been a miner about fourteen years. Stiles had' been a miner eight or nine years, “ and fully as good if not better than the witness.” The two, in company with defendant Hook, left Denver Monday, September 21st. On the wajr to the mine defendant hired two men and a team, and took them along to cut and haul timber. Hook remained until Friday, the 25th, when he returned to Denver. Smith and deceased commenced sinking shaft Tuesday, 22nd, sunk the shaft three or four feet on that day, three or four feet the next day. It was not shown when the balance to make the twelve feet was sunk, but it must have been the two following days, as Smith testified: “ Before he (Hook) went away I told him we would have to timber that shaft and he said go ahead and timber it.” The accident by which Stiles lost his life occurred on the following Tuesday. The shaft was then timbered up about five feet. Witness was on top preparing timber, Stiles in the bottom, putting in the timber, when a mass of earth fell, killing him instantly. Hook had not been there since Friday previous. Whether any sinking had been done after he left was left in doubt, but there was sinking done the day he left. How, as to the evidence of negligence to charge the defendants, Smith says that when the shaft was down six or seven feet, he told Hook it had better be timbered. Hook wanted it sunk deeper, so *397 he could change the shaft to suit the trend of the vein. When the suggestion was made the next time, Hook instructed them to go ahead and do it. It is alleged in the complaint “ that deceased had, immediately preceding his death, complained to the defendants of their negligence in not timbering the shaft.” This could not have been true, as Smith swears Hook left on Friday previous, and, of course, had no knowledge of affairs after that time; and what, if anything, was done afterwards to increase the danger is not shown, but during the intervening time Smith and deceased were prosecuting the work without the presence of either defendant. Smith also testified, “Mr. Hook did not meet Mr. Stiles in reference to his employment.” On cross-examination he testifies that deceased had worked in the shaft from the surface and knew the character of the ground; that Hook had never been in the shaft, and although witness and deceased had discussed the shaft as > dangerous, neither of them informed Hook that the shaft was dangerous.
To negative in advance the defense of contributory negligence, the following peculiar allegation was inserted in the complaint: “ That at the time deceased was killed as aforesaid, he thought, and any man of ordinary prudence, with the knowledge the deceased had of the ground he was working in, would have thought that said shaft could be timbered before it would cave in.” If such was the conclusion of an experienced miner, who had done the work, and would have been the conclusion of any man of “ ordinary prudence,” how could defendants be charged with negligence and made liable for failing to exercise extraordinary and prophetic prudence previous to the preceding Friday ?
It is clear, beyond controversy, that deceased had greater knowledge of the shaft and the character of the ground than Hook could have had, and that deceased, a practical miner of years, possessed of all knowledge that could be obtained, voluntarily prosecuted the work and incurred the risk incident to the employment. The unfortunate calamity was properly designated by the witness in his testimony : “ I *398 suppose this v/as an accident.” It certainly could not have been predicted by Hook on the Friday before, for had those engaged in the work on Tuesday recognized the impending danger, deceased would not have been in the shaft. There was no evidence of negligence on the part of the defendants to charge them with liability for the unfortunate death. Shear. & Red. on Neg., sec. 12.
The supreme court and this court have been required to examine in several cases and apply the law in regard to alleged negligence. The law has been so fully stated in B. & Colo. R. Co. v. Liehe, 17 Colo. 280; Lord v. Pueblo S. & R. Co., 12 Colo. 390; Anson v. Evans, 19 Colo. 274; Holman v. Boston L. & S. Co., 20 Colo. 7; Fairmount Cemetery Assn. v. Davis, 4 Colo. App. 570; Deane v. Roaring Fork Light & Power Co., 5 Colo. App. 521; B. & M. R. R. Co. v. Budin, 6 Colo. App. 275; Colo. C. & I. Co. v. Lamb, 6 Colo. App. 255, that further-discussion of the law of this case seems unnecessary. The judgment of nonsuit was correct. That the court had a right to withdraw the case from the jury and cause a judgment of nonsuit to be entered, see Shear. & Red. on Neg., sec. 11; Mau v. Morse, 3 Colo. App. 359; Denver Transit Co. v. Dwyer, 3 Colo. App. 408.
The judgment of the district court must be affirmed.
Affirmed. .